United States Court of Appeals
Fifth Circuit

**F I L E D**

**May 10, 2006**

Charles R. Fulbruge III
Clerk

*In the United States Court of Appeals*

*for the Fifth Circuit*

_____

No. 04-60983

_____

LEROY E. BLEDSOE, JR.,

> Plaintiff - Appellant,

v.

CITY OF HORN LAKE, MISSISSIPPI,

> Defendant - Appellee,

_____

Appeal from the United States District Court
for the Northern District of Mississippi
USDC No. 2:03-CV-356

_____

Before BENAVIDES, STEWART, and OWEN, Circuit Judges.

PRISCILLA R. OWEN, Circuit Judge:

Leroy E. Bledsoe, Jr. appeals the district court's summary judgment in favor of the City of Horn Lake, Mississippi. The issues are whether the City deprived Bledsoe of a liberty interest by discharging him in connection with false, publicized, and stigmatizing charges without notice or an opportunity to clear his name and whether the City deprived Bledsoe of a property interest in accrued vacation hours without notice or a hearing. We conclude that Bledsoe's liberty interest deprivation claim fails because he never requested

a name-clearing hearing, and his property deprivation claim fails because he was not entitled to the accrued vacation hours under the terms of his employment. Therefore, we AFFIRM.

**I**

The City hired Bledsoe as its part-time fire chief and promoted him to a full-time position eight years later. Although the City's mayor praised Bledsoe's overall performance as fire chief, Bledsoe's employment with the City ended the following year amidst charges of misconduct. In recounting the facts leading up to Bledsoe's separation from the City, we view those facts in the light most favorable to Bledsoe, the non-movant.[1]

The City's Board of Aldermen received several complaints against Bledsoe from James Cook, a firefighter who had recently resigned. The complaints included assertions that Bledsoe had altered time sheets, brandished a firearm in his office, and falsified reports regarding the readiness and fitness of pump stations to the state's fire ratings bureau. Concerned about the charges of wrongdoing, the Board called Bledsoe into a meeting. Bledsoe was questioned at length, but he largely denied the allegations. The Board then asked the Mayor to investigate further, and despite the Mayor's conclusions that most of the allegations had little merit, the Board decided to convene a closed-door session three days after its initial meeting with Bledsoe to decide whether to terminate him.

Bledsoe learned of the closed-door session shortly before it was to occur. The morning of the session, a local newspaper article quoted the Board members and the Mayor

---

[1] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

2

with regard to the charges against Bledsoe. Following the advice of his attorney, Bledsoe asked the Board to either postpone the meeting until his attorney could be with him or to record the proceedings. The Board denied both of Bledsoe's requests. The Board proceeded to meet privately, while Bledsoe waited outside. During the meeting, one of the Board members, Alderman Shackleford, came out of the session and told Bledsoe that if he did not resign, the Board would fire him. Alderman Shackleford also told Bledsoe that unless he resigned, Bledsoe and the fire department would be subjected to further negative publicity. Bledsoe concluded he had no choice but to resign.

Bledsoe tendered his written resignation and then filed suit against the City asserting violations of 42 U.S.C. § 1983. Specifically, Bledsoe claimed that when the City discharged him in the wake of false, stigmatizing, and publicized charges, the City deprived him of a liberty interest without notice or an opportunity to clear his name. Bledsoe additionally alleged he was entitled to compensation for 240 hours of accrued annual leave time and the City had deprived him of that compensation without due process by demanding his immediate resignation. The City moved for summary judgment on all of Bledsoe's claims. The district court granted the motion in the City's favor with respect to the liberty interest claim, concluding that Bledsoe had voluntarily resigned, but did not address Bledsoe's property interest claim. Bledsoe appeals and asserts that he produced sufficient evidence to survive summary judgment on the liberty interest claim and that the district court erred by failing to consider his property interest claim.

## II

We review the district court's summary judgment *de novo*, applying the same legal

3

standards as the district court.[2] Summary judgment is proper when the pleadings, discovery responses, depositions, and affidavits show that no genuine issue exists regarding any material fact and the moving party is entitled to judgment as a matter of law.[3] When the facts are disputed, the court does not determine the credibility of the evidence and draws all justifiable inferences in favor of the nonmovant.[4]

Section 1983 provides a civil remedy in federal court for violations, under color of state law, of a person's constitutionally recognized rights, privileges, or immunities.[5] If the government discharges an employee amidst allegations of misconduct, the employee may have a procedural due process right to notice and an opportunity to clear his name.[6] Neither damage to reputation alone[7] nor the stigma resulting from the discharge itself trigger the protections of due process.[8] Rather, a liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises, only when the employee is "discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him

---

[2]*Hanks v. Transcon. Gas Pipe Line Corp.*, 953 F.2d 996, 997 (5th Cir. 1992).

[3]FED. R. CIV. P. 56(c).

[4]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[5]*Findeisen v. North East Indep. Sch. Dist.*, 749 F.2d 234, 236-37 (5th Cir. 1984).

[6]*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 573 (1972), *quoted in Hughes v. City of Garland*, 204 F.3d 223, 225-26 (5th Cir. 2000) (discussing the Supreme Court's recognition of a procedural due process right to notice and an opportunity to clear one's name when the government discharges an employee in a manner that puts the employee's "good name, reputation, honor, or integrity . . . at stake").

[7]*Paul v. Davis*, 424 U.S. 693, 701 (1976).

[8]*Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 (5th Cir. 1984) ("Mere proof that nonrenewal might make an individual less attractive to other employers does not, by itself, implicate a liberty interest.").

4

and forecloses him from other employment opportunities."[9]  This court employs a seven-element "stigma-plus-infringement" test to determine whether § 1983 affords a government employee a remedy for deprivation of liberty without notice or an opportunity to clear his name.[10]  The plaintiff must show: (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request.[11]

We need not reach whether there is some evidence that the City constructively discharged Bledsoe, and therefore that his resignation was not voluntary, because Bledsoe's undisputed failure to request a hearing defeats his liberty interest claim.  Though an employee need not use the term "name-clearing hearing" to satisfy the sixth element of the stigma-plus-infringement test, the employee must still petition the employer in a manner that can be construed as asking for an opportunity to clear his name.[12]  Bledsoe asked the City to either record the meeting in which the Board would decide whether to fire him or postpone the meeting until his attorney could be present.  Bledsoe did not ask to confront the Board in a public forum regarding the stigmatizing charges against him either before or after his separation from employment.  Bledsoe failed to request a name-clearing hearing as a

---

[9]*White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981).

[10]*Hughes*, 204 F.3d at 226.

[11]*Id.*

[12]*Rosenstein v. City of Dallas*, 876 F.2d 392, 396 (5th Cir. 1989).

matter of law.

Bledsoe's reliance on *Rosenstein v. City of Dallas*[13] is misplaced. In that case, this court construed a police officer's request for access to an established appeals procedure as a request for a name-clearing hearing.[14] The police officer in *Rosenstein* wished to contest his employer's decision to fire him for allegedly making harassing and obscene telephone calls to a fellow officer. By requesting to appeal the discharge decision, the officer was effectively asking for an opportunity to prove his innocence and thus to clear his name.[15] The appeals procedure would provide the officer with "a public forum to clear his name before the governing body that discharged him," as required by due process.[16]

Bledsoe's requests to postpone or record the Board's meeting do not resemble the *Rosenstein* plaintiff's petition for access to his employer's established appeals process. Even had the Board postponed its closed-door meeting so Bledsoe's attorney could be present, Bledsoe still would not have confronted the governing body that discharged him, and his attorney's presence with him outside the Board's private meeting would not amount to a public opportunity to clear his name. Similarly, recording the meeting would not transform it into a public forum in which Bledsoe could contest the charges against him. Bledsoe did not ask the Board to open the meeting to the public so he could confront the charges against him.

_____

[13]*Id.*

[14]*Id.*

[15]*Id.*

[16]*Id.*

Bledsoe contends that the City had a duty to inform him that he had the right to a name-clearing hearing on request and breached that duty.[17] We are not persuaded by this argument. Even assuming the City had such a duty, there is no evidence the duty was breached. The City's written personnel policies expressly permitted an appeal of "any form of disciplinary action," which included discharge.[18] Assuming Bledsoe was discharged, as he contends, he failed to avail himself of an appeal provided by the City's policies.

## III

Bledsoe's property interest deprivation claim likewise fails because he has not alleged a constitutionally cognizable interest in accrued vacation leave. In support of his property interest claim, Bledsoe cites *Eguia v. Tompkins*, a case in which this court concluded that the plaintiff had a property interest in earned compensation and expense reimbursements.[19]

---

[17]*See Gonzalez v. Dep't of Transp.*, 701 F.2d 36, 39-40 (5th Cir. 1983).

[18]The personnel policies manual provided:

Any City employee who is issued any form of disciplinary action has the right to appeal said disciplinary action to the Mayor and Board of Aldermen if they feel the disciplinary action issued is unjustified. Said appeal request is to be submitted to the City Clerk in writing within 5-days receipt of the disciplinary action.

Upon receipt of the request for an appeal hearing, the Mayor and Board of Aldermen will set a date for the appeal. Any decision of the Mayor and Board of Aldermen is final.

The manual describes disciplinary action: "Disciplinary action may call for any of four steps – remedial training report, written warning, suspension with or without pay, demotion, or termination of employment – depending on the severity of the problem and the number of occurrences. There may be circumstances when one or more steps are bypassed."

[19]756 F.2d 1130, 1138 (5th Cir. 1985) (citing *Sniadach v. Family Fin. Corp.*, 395 U.S. 337 (1969), in support of its holding that the "plaintiff's interest in his salary and expense reimbursement is a property interest protected by the Constitution").

7

Bledsoe does not claim that the City wrongfully withheld his salary or failed to reimburse him for expenses he paid on the City's behalf. Rather, Bledsoe claims that the City owes him for the vacation time he earned but never used. He cites no case in support of his claim that he has a constitutionally protected property interest in earned vacation time as opposed to compensation or expense reimbursements, and the only source for such an interest is the City's Personnel Policies manual. Assuming the manual created a property interest in compensation for unused vacation hours, the manual also created the conditions for that interest to vest. It vests only when an employee gives two weeks prior notice of termination of employment.[20] The manual does not provide for compensation for accrued vacation time when an employee is discharged. If Bledsoe was constructively discharged, as he claims, then he did not resign, much less after giving two-weeks notice. If he in fact resigned, he did not give the required notice. According to the terms of the manual, the circumstances of Bledsoe's departure precluded him from acquiring any property interest in his unused vacation time. Thus, he is not entitled to any procedural protection for the alleged deprivation of compensation for that time.

* * * * *

As Bledsoe did not request an opportunity to clear his name, he has failed to create a genuine issue of fact as to the deprivation of a liberty interest without due process. Likewise, Bledsoe has not produced evidence to show entitlement to compensation for

---

[20]The personnel policies manual provides: "Upon termination of employment, employees hired prior to August 2001 who have completed more than 2-years [sic] of service will be paid for unused vacation time (not to exceed 240 hours) provided that they give 2-weeks written notice prior to [the] last day of work."

8

accrued vacation hours, such that the protections of due process are implicated. Therefore, this court AFFIRMS the district court's summary judgment in favor of the City.