# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
February 22, 2012

No. 11-30035

Lyle W. Cayce
Clerk

Dr. DENNIS LARAVIA,

Plaintiff - Appellant

v.

FRED CERISE, Individually and in His Official Capacity as Vice President, Louisiana State University System; KIM LEBLANC, Individually and in His Official Capacity as Chairman of LSU Family Medicine, LSUHSC-NO; LARRY HOLLIER, Individually and in His Official Capacity as Chancellor of LSUHSC-NO; CHARLES ZEWE, Individually and in His Official Capacity as Vice President, LSU; KURT SCOTT, Individually and in His Official Capacity as Hospital Administrator for LSU BMC; THE BOARD OF SUPERVISORS OF LOUISIANA STATE UNIVERSITY AND AGRICULTURAL AND MECHANICAL COLLEGE,

Defendants - Appellees

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:08-CV-352

Before BARKSDALE, GARZA, and ELROD, Circuit Judges.

PER CURIAM:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 11-30035

Regarding the summary judgment against his numerous claims, Dr. Dennis LaRavia contests only the rulings on his claims for a due-process violation, defamation, infringement of freedom of speech and of association, and reprisal. AFFIRMED.

I.

The following summary-judgment-record facts are not disputed. Dr. LaRavia became Program Director of the Louisiana State University (LSU) Family Medicine Residency Clinic in Bogalusa, Louisiana (the clinic), in 2005. He was employed on a year-to-year basis; LSU had the option to give him notice of non-reappointment, effective at the end of any year.

In December 2007, Dr. LaRavia was notified he would not be reappointed. He was not given reasons for that decision.

Shortly thereafter, members of the affected community (Bogalusa) undertook a campaign to have Dr. LaRavia reinstated. A state senator from Bogalusa, among others, urged LSU to state publicly its reasons for not reappointing Dr. LaRavia.

In response, LSU Vice President for Health Affairs and Medicine, Dr. Cerise, issued a statement (the Cerise Statement) that was provided to a local newspaper in Bogalusa and read at a town meeting there in January 2008. The statement provided the following reasons for the non-reappointment: "[m]ultiple billing irregularities" under Dr. LaRavia's supervision, which were "being referred to appropriate state and federal authorities for review"; "breaches" or "abuses" of federal reimbursement rules under Dr. LaRavia's supervision; residents' "signing off" on case files in the names of staff physicians who were not present; Dr. LaRavia's refusal to cooperate with the hospital at which the clinic was based, including denying hospital administrators access to the clinic and refusing to produce the chart of a patient who had an adverse outcome; inadequate inpatient admissions due to Dr. LaRavia's failure to enter into

No. 11-30035

affiliation agreements with local physicians; and, Dr. LaRavia's repeated insubordination.

Following his non-reappointment, Dr. LaRavia continued for a year as a faculty physician at the clinic. His April 2008 email to a defendant concerning allegedly observed possible sexual harassment (the basis for his reprisal claim) is discussed *infra* in part II.D.

Dr. LaRavia filed this action in May 2008 in state court against, *inter alios*, Dr. Cerise and LSU, claiming: defamation, libel, and slander; intentional infliction of emotional distress; infringement of freedom of speech and association, under 42 U.S.C. § 1983; violation of due process, under 42 U.S.C. §1983; reprisal, pursuant to Louisiana Revised Statutes § 23:967; and, abuse of rights. The action was removed to federal court. Defendants were awarded summary judgment, pursuant to the district court's detailed and comprehensive opinion. *LaRavia v. Cerise*, No. 3:08-CV-352 (M.D. La. 13 Dec. 2010) (Order and Reasons).

## II.

Dr. LaRavia raises only his due-process, defamation, First Amendment, and reprisal claims. For the reasons that follow, summary judgment against each claim was proper.

A summary judgment is reviewed *de novo*. *E.g.*, *Young v. Merrill Lynch & Co.*, 658 F.3d 436, 440 (5th Cir. 2011). Such a judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law". Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence is such that a reasonable juror could find for the non-moving party. *E.g.*, *Kujanek v. Houston Poly Bag I, Ltd.*, 658 F.3d 483, 487 (5th Cir. 2011). All facts are viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party. *E.g.*, *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010). But, where the burden of production at trial ultimately

No. 11-30035

rests on the non-moving party, "the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case". *Id.* (internal quotation marks omitted).

A.

"The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents v. Roth*, 408 U.S. 564, 569 (U.S. 1972). A liberty interest is infringed, and the right to an opportunity to clear one's name arises, when a public employee is "discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities". *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th Cir. 2006) (internal quotation marks omitted).

To survive summary judgment against this claim, Dr. LaRavia had to present evidence, sufficient to create the requisite genuine dispute, that: (1) he was discharged; (2) stigmatizing charges were made against him in connection with that discharge; (3) those charges were false; (4) he was not provided notice and an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name (name-clearing hearing); and, (7) that request was refused. *E.g.*, *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000).

The district court ruled that Dr. LaRavia failed to substantiate his allegation that he was denied a name-clearing hearing: "Dr. LaRavia's undisputed failure to request a hearing defeats his liberty interest claim". Order and Reasons, at 18 (13 Dec. 2010). Dr. LaRavia maintains the district court erred in not accepting his "direct assertions that he not only asked [LSU Chair of Family Medicine, Dr. LeBlanc,] for reasons on the day of his removal, but also asked for the opportunity to discuss the removal and any alleged reasons with the defendants". Defendants respond that the summary-judgment record

No. 11-30035

reflects there is no genuine dispute of material fact regarding Dr. LaRavia's assertion that he "also asked for the opportunity to discuss the removal".

When asked at his deposition what request he had made for a name-clearing hearing, Dr. LaRavia responded: "I don't know what venue I had for that". As to Dr. LaRavia's assertion that he asked Dr. LeBlanc for reasons on the day of his removal, "[t]hough an employee need not use the term 'name-clearing hearing' . . . , the employee must still petition the employer in a manner that can be construed as asking for an opportunity to clear his name". *Bledsoe*, 449 F.3d at 653. Dr. LaRavia fails to show a genuine dispute on whether he requested a name-clearing hearing.

### B.

Defamation comprises four elements under Louisiana law: (1) a false and defamatory statement about another; (2) an unprivileged publication to a third party; (3) fault on the part of the publisher; and, (4) a resulting injury. *E.g.*, *Kennedy v. Sheriff of East Baton Rouge*, 935 So. 2d 669, 674 (La. 2006). Dr. LaRavia contends, *inter alia*, that the district court erred in requiring him to show a genuine dispute regarding malice on the part of defendants.

"In some instances an individual may achieve such pervasive fame or notoriety that he becomes a public figure for all purposes and in all contexts." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 351 (U.S. 1974) ("general-purpose" public figure). "More commonly, an individual voluntarily injects himself *or is drawn into a particular public controversy* and thereby becomes a public figure for a limited range of issues." *Id.* ("limited-purpose" public figure) (emphasis added). A public figure must prove malice–that is, knowledge of falsity or reckless disregard of the truth–to recover for defamation. *Id.* at 334-35. Plaintiff is a limited-purpose public figure if: (1) the controversy is public both in that people are discussing it and that people other than the immediate participants are likely to feel the impact of its resolution; (2) plaintiff has more

5

than a tangential role in the controversy; and, (3) the claimed defamation is germane to plaintiff's participation in the controversy. *Trotter v. Jack Anderson Enters., Inc.*, 818 F.2d 431, 433-34 (5th Cir. 1987).

In his brief here, Dr. LaRavia asserts he "did NOTHING to either inject himself into a public controversy, stir up a public controversy, or even comment on any public controversy". (Emphasis in original.) Nevertheless, the summary-judgment record shows he was "drawn into a particular public controversy". *Gertz*, 418 U.S. at 351. As explained by the district court: "[P]atients of the [LSU] Family Practice Residency Program would likely feel the impact of a leadership change; [Dr. LaRavia] had more than a tangential role in the controversy, that being the public outcry following his release; and the alleged defamation was germane to the topic to be addressed at the public town hall meeting . . . [regarding the Cerise Statement]". Order and Reasons, at 9-10 (citing *Trotter*, 818 F.2d at 433). In opposition to summary judgment, Dr. LaRavia offered no evidence of defendants' knowledge of falsity or reckless disregard of the truth concerning the non-reappointment reasons given in the Cerise Statement. Accordingly, he fails to show a genuine dispute on whether defendants published those reasons with malice.

To bypass that obstacle, Dr. LaRavia contends malice is presumed because, according to him, the Cerise Statement was defamatory *per se*. *See Costello v. Hardy*, 864 So. 2d 129, 140 (La. 2004) ("Words which expressly or implicitly accuse another of criminal conduct, or which by their very nature tend to injure one's personal or professional reputation . . . are considered defamatory per se."). But, even were the Cerise Statement defamatory *per se*, Dr. LaRavia still would have to create a genuine dispute regarding malice. *Ortego v. Hickerson*, 989 So. 2d 777, 782 (La. App. Ct. 2008) (citing *New York Times v. Sullivan*, 376 U.S. 254, 283 (1964) ("[T]he Constitution delimits a State's power to award damages for libel in actions brought by public officials".)).

No. 11-30035

Dr. LaRavia also contends the district court erred in ruling the Cerise Statement was conditionally privileged. Because Dr. LaRavia's failure to present evidence of malice is dispositive, that question need not be reached.

C.

Dr. LaRavia claims violations of his rights under the First Amendment to freedom of speech and of association. As stated *supra*, and discussed below, these claims fail.

a.

The First Amendment protects a public employee's right to speak as a citizen on matters of public concern. *E.g.*, *Garcetti v. Ceballos*, 547 U.S. 410, 417 (2006). Dr. LaRavia claims his freedom of speech was infringed when he was emailed LSU's Media Policy and "instructed . . . not to say anything in the [January 2008] public meeting".

First, LSU's Media Policy expressly excludes from its scope citizen-speech: "Nothing in this policy is . . . intended to affect an individual's right to express his or her personal views". Second, there is no evidence Dr. LaRavia was instructed not to attend or speak at the town meeting. Indeed, all evidence Dr. LaRavia cites suggests just the opposite—he was not given any instruction other than what was in the LSU Media Policy.

b.

Dr. LaRavia also maintains his freedom of association was infringed both when he was "chewed out" for meeting the clinic's residents and when they were instructed by Dr. LeBlanc not to associate with him. Even if substantiated, those allegations would not constitute infringement of freedom of association. *E.g.*, *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989) ("we do not think the Constitution recognizes a generalized right of 'social association'"). Dr. LaRavia has not alleged, much less created a genuine dispute on, a deprivation of his right to "intimate association" (family relationships) or to "expressive

No. 11-30035

association" (for purposes of First Amendment activities). *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617-18 (1984). *See also Kipps v. Caillier*, 205 F.3d 203, 205 (5th Cir. 2000) ("Supreme Court precedent with respect to intimate association can be synthesized as a continuum with 'family relationships' at one end, receiving the most protection, and arms length relationships, like a business acquaintance, at the other end, 'remote from the concerns giving rise to this constitutional protection'." (quoting *Roberts*, 468 U.S. at 620)).

### D.

Last, to preclude summary judgment against his reprisal claim, Dr. LaRavia had to create a genuine dispute regarding: (1) a defendant violated a state law by a prohibited workplace act or practice; (2) Dr. LaRavia advised defendant in good faith of that violation; (3) Dr. LaRavia then refused to participate in, or threatened to disclose, that practice; and, (4) he was subjected to a reprisal as a result of his refusal or threat. La. Rev. Stat. § 23:967; *Hale v. Touro Infirmary*, 886 So. 2d 1210, 1216 (La. Ct. App. 2004).

In his 25 April 2008 email to, *inter alios*, Dr. LeBlanc, Dr. LaRavia reported allegedly observed "possible" sexual harassment by a faculty member. That email was more than four months after his December 2007 notice of non-reappointment. In any event, he presented no evidence that he either refused to participate in, or threatened to disclose, any prohibited workplace practice.

### III.

For the foregoing reasons, the judgment is AFFIRMED.