# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 12, 2013

No. 12-10928
Summary Calendar

Lyle W. Cayce
Clerk

CHRISANNE LANIER,

Plaintiff–Appellant,

v.

UNIVERSITY OF TEXAS SOUTHWESTERN MEDICAL CENTER; SURESH
GUNAASEKARAN; DENNIS PFIEFFER; TIM LEARY, Individually;
DANIEL K. PODOLSKY, MD, in his official capacity as Chief Operating
Officer and President of the University of Texas Southwestern Medical
Center,

Defendants–Appellees.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-00829

Before HIGGINBOTHAM, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Chrisanne Lanier sued the University of Texas Southwestern Medical
Center, Suresh Gunaasekaran, Dennis Pfeiffer, Tim Leary, and Daniel K.
Podolsky (collectively, UTSW) asserting claims for employment discrimination

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not
be published and is not precedent except under the limited circumstances set forth in 5TH CIR.
R. 47.5.4.

No. 12-10928

under three federal statutes: the Family Medical Leave Act (FMLA), the Americans with Disabilities Act (ADA), and the Rehabilitation Act (RA). The district court granted UTSW summary judgment on all claims. We affirm.

**I**

Lanier worked for UTSW as a business analyst in their Information Resources Department. Business analysts were responsible for maintaining the information systems at UTSW's hospitals, which required 24-hour on-call coverage support. Accordingly, each business analyst worked a day-time shift and participated in a rotating schedule of on-call duty. Each rotation lasted for one week, and each business analyst was on call about once every twelve weeks.

While on call, a business analyst was required to have available a pager, the on-call laptop computer, and a manual of instructional procedures detailing how to resolve common technical issues. Whenever an issue arose, an operator would page the on-call business analyst, who was expected to respond within fifteen minutes. If the business analyst failed to respond within that time, the operator would then try alternate numbers—typically a cell or home phone number—in order to seek support. Failing that, the operator would then contact the person listed as the backup.

At least as early as 2009, Lanier made repeated requests to supervisor Tim Leary to change her seven-day on-call rotation to a three- and four-day rotation. Notably, Lanier never indicated that she was requesting this change because of a disability—only that she was unhappy with the sleep disruptions and felt the sleep deprivation was affecting her job performance. These requests were denied.

The week of September 1, 2010, Lanier was scheduled to be on call. But on September 2, Lanier sent a text message to Leary to inform him that her father was in the emergency room and that she would be unable to be on call that night. Leary responded that another employee would cover Lanier's on-call

No. 12-10928

duty that evening. That same night, Lanier emailed Matthew Kinney, another supervisor, who agreed to swap call rotations with her.

Lanier began her make-up call rotation on September 22. On September 23, Leary received a call as the backup, informing him that the operator had attempted to page Lanier six times that night but had not received any response. Leary put himself on call for the rest of the evening. The following morning, Leary asked Lanier to log onto the on-call laptop so that he could verify that she was following the proper procedure. Instead, Lanier handed her laptop to Leary and tossed her pager out of her cubicle. She then retrieved the laptop case and on-call manual and took them to Leary's office. She stated, "I'm so f****** pissed at you for what you did on my father's heart attack," and then left work at 9:30 a.m. without any of the equipment needed to perform her on-call duties that evening.

Lanier went immediately to the Employee Assistance Program (EAP) office on campus, which is a "short-term therapy program designed to assist employees who may be dealing with personal problems that affect their relationships at home and at work." Lanier did not inform any of her supervisors where she was going. Though Lanier left several voicemails for Suresh Gunaasekaran, the associate vice president of her department, none were received because Gunaasekaran was taking a personal day. Therefore, Leary's supervisor, Dennis Pfieffer, informed Lanier that he was accepting her resignation.

Lanier filed this action against UTSW, alleging various theories of recovery under the FMLA, ADA, and RA. Following discovery, the parties filed cross-motions for summary judgment. The district court held a hearing and granted summary judgment in favor of UTSW. This appeal followed.

3

No. 12-10928

## II

"We review the grant of summary judgment de novo, applying the same standard as the district court."[2] Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] A genuine dispute exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[4]

## III

Lanier brought interference and retaliation claims under the FMLA and discrimination and retaliation claims under both the ADA and RA. The district court held that Lanier had failed as a matter of law to establish a prima facie case for any of her claims. After reviewing the record, we affirm the grant of summary judgment to UTSW on all claims.

## A

The FMLA permits an employee to take up to twelve weeks of medical leave for their own serious medical condition or for the care of a family member with a serious medical condition.[5] The FMLA prohibits an employer from interfering with, restraining, or denying the exercise or attempted exercise of an employee's right to take FMLA leave.[6] The statute also makes it unlawful for an employer to discharge or retaliate in any other manner against an individual for opposing the employer's unlawful FMLA practices.[7] Lanier argues that

---

[2] *Armstrong v. City of Dall.*, 997 F.2d 62, 65 (5th Cir. 1993).

[3] *Newman v. Guedry*, 703 F.3d 757, 761 (5th Cir. 2012) (quoting FED. R. CIV. P. 56(a)).

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

[5] 29 U.S.C. § 2612(a)(1).

[6] *Id.* § 2615(a)(1).

[7] *Id.* § 2615(a)(2).

No. 12-10928

UTSW (1) interfered with her right to take leave to care for her father and (2) retaliated against her for requesting leave. We address each claim below.

**1**

To establish a prima facie interference case,[8] Lanier must show that (1) she was an eligible employee, (2) UTSW was an employer subject to the FMLA's requirements, (3) she was entitled to leave, (4) she gave proper notice of her intention to take FMLA leave, and (5) UTSW denied her the benefits to which she was entitled under the FMLA.[9] Because the first three elements are not in contention, we assess only whether Lanier gave proper notice of her intention to take FMLA leave.

Although an employee need not use the phrase "FMLA leave," she must give notice that is sufficient to reasonably apprise her employer that her request to take time off could fall under the FMLA.[10] This court does not apply categorical rules for the content of the notice; instead we focus on what is "practicable" based on the facts and circumstances of each individual.[11] An

---

[8] Although UTSW argues that Lanier failed to plead explicitly an interference claim, her complaint provided factual allegations supporting such a claim. Furthermore, courts may look to the pretrial conduct of parties to determine whether a defendant had notice, and UTSW responded to an interference claim in its answer. *Sundstrand Corp v. Standard Kollsman Indus., Inc.*, 488 F.2d 807, 811 (7th Cir. 1973) (citing *State Farm Mut. Auto. Ins. Co. v. Scott*, 198 F.2d 152 (5th Cir. 1952)).

[9] *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir. 2012); *see also Burris v. Brazell*, 351 F. App'x 961, 963 (5th Cir. 2009) (per curiam) ("To make a prima facie case for interference with FMLA rights, [the plaintiff] must first demonstrate that she took leave that was protected under the FMLA." (citing *Mauder v. Metro. Transit Auth. of Harris Cnty., Tex.*, 446 F.3d 574, 580 (5th Cir. 2006))).

[10] *Manuel v. Westlake Polymers Corp.*, 66 F.3d 758, 762-64 (5th Cir. 1995); *see also* 29 C.F.R. § 825.303(b).

[11] *Manuel*, 66 F.3d at 764.

5

employer may have a duty to inquire further if statements made by the employee warrant it, but "the employer is not required to be clairvoyant."[12]

Here, Lanier's statements were insufficient to invoke the FMLA. The record establishes that the only request for leave Lanier made was a text message requesting to be taken off call the evening of September 2, which she sent after learning her father was in the emergency room. Lanier argues that Leary should have inquired further since he knew that Lanier's father was over 90 years of age and in poor health and because she had told Leary that morning that her father was having breathing problems. It would be unreasonable to expect Leary to know that Lanier meant to request FMLA leave based on these facts. Lanier's only request was to be relieved of on-call duty that night. Lanier had taken FMLA leave in the past and was familiar with the proper way to request it, yet she did not do so here. No reasonable jury could conclude that the text message Lanier sent was sufficient to apprise Leary of her intent to request FMLA leave to care for her father. Accordingly, we affirm the grant of summary judgment to UTSW on this claim.

### 2

Lanier also brought a retaliation claim under the FMLA, alleging she was discharged for requesting FMLA leave and for protected conduct that occurred on September 24, 2010. To establish a prima facie case for FMLA retaliation, Lanier must show that (1) she was protected under the FMLA, (2) she suffered an adverse employment action, and (3) she either was treated less favorably than a similarly situated employee who had not requested leave or the adverse decision was made because she took FMLA leave.[13] Because we agree with the district court that Lanier failed to provide evidence that she engaged in

---

[12] *Satterfield v. Wal-Mart Stores, Inc.*, 135 F.3d 973, 980 (5th Cir. 1998) (internal quotation mark omitted).

[13] *Hunt v. Rapides Healthcare Sys., LLC*, 277 F.3d 757, 768 (5th Cir. 2001).

protected activity, we affirm the grant of summary judgment on this FMLA claim as well.

First, as discussed above, Lanier did not make a proper request for FMLA leave on September 2, 2010 to take care of her father.[14] Accordingly, she did not make out a prima facie case as to this first theory of retaliation.

As for her second theory of retaliation, Lanier asserts two factual bases concerning events on September 24. First, Lanier claims she was discharged for complaining about the denial of her FMLA leave request. This argument presupposes that her text message was a proper FMLA leave request, and we have already determined that it was not.

Lanier also argues that she was discharged for seeking help at the EAP office. This argument fails for several reasons. First, use of the EAP service is not protected activity under the FMLA. Although Lanier received resources to assist with filing an FMLA request, the EAP is not involved with the filing or processing of such claims. Furthermore, even if an EAP visit could be seen as protected activity, there is no evidence that anyone in Lanier's chain of command was aware that she had visited the EAP. Although Lanier left several voicemails for Gunaasekaran, she does not dispute his testimony that he was taking a personal day and never heard them. Because Lanier failed to show that she engaged in FMLA protected activity or that UTSW was aware of any such activity, we affirm the grant of summary judgment on this FMLA retaliation claim as well.

**B**

We turn next to Lanier's claims under the ADA and RA. The ADA is designed to "provide a clear and comprehensive national mandate for the

---

[14] *See supra* notes 43-44 and accompanying text.

elimination of discrimination against individuals with disabilities."[15] Similarly, the RA protects handicapped individuals against the denial of benefits.[16] The language in both statutes is alike; "[i]n fact, [t]he ADA expressly provides that 'the remedies, procedures and rights' available under the RA are also accessible under the ADA."[17] Accordingly, "jurisprudence interpreting either section is applicable to both."[18]

**1**

Lanier claims she was discriminated against because UTSW discharged her rather than providing reasonable accommodations for her sleeping disorder. The district court, however, held that Lanier failed to establish a prima facie case since there were no facts "from which a reasonable jury could conclude that she was disabled, [or] that she engaged in protected conduct."

To establish a prima facie case of discrimination for failure to accommodate, Lanier must show that (1) UTSW was covered by the statute, (2) she was disabled, (3) she could perform the essential functions of her job with or without reasonable accommodations, and (4) UTSW had notice of her disability and failed to provide accommodation.[19] "The threshold issue in a plaintiff's prima facie case is a showing that she suffers from a disability,"[20] which the ADA and RA define in relevant part as "a physical or mental impairment that substantially limits one or more major life activities of such

---

[15] *Delano-Pyle v. Victoria Cnty., Tex.*, 302 F.3d 567, 574 (5th Cir. 2002) (second alteration in original) (internal quotation marks omitted).

[16] *Id.*

[17] *Id.* (quoting 42 U.S.C. § 12133).

[18] *Id.* (internal quotation marks omitted).

[19] *Bridges v. Dep't of Soc. Servs.*, 254 F.3d 71, 2001 WL 502797, at *1 (5th Cir. 2001) (unpublished) (citing *Lyons v. Legal Aid Soc'y*, 68 F.3d 1512, 1515 (2d Cir. 1995)).

[20] *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1024 (5th Cir. 1999) (per curiam).

No. 12-10928

individual."[21] An impairment is substantial if it "substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population."[22]

We assume without deciding that Lanier suffered from a disability that substantially limited her ability to perform the major life activities of sleeping and thinking.[23] Lanier nevertheless fails to make out a prima facie case because the record does not show that UTSW was aware that Lanier was disabled such that reasonable accommodations should have been provided. It is undisputed that Lanier was not diagnosed with insomnia until after UTSW accepted her resignation. And the parties agree that Lanier never tied her request for an alternate on-call rotation to insomnia or a sleeping disorder of any kind; at most, she complained of being sleep deprived. The very nature of on-call duty interferes with one's sleep; thus, complaining of sleepiness while on-call would not trigger notice of a disability. Absent any evidence from which a reasonable jury could conclude that UTSW was aware of a disability, Lanier's request to modify her on-call schedule cannot be construed as a request for reasonable accommodation. Accordingly, we affirm the grant of summary judgment on this discrimination claim.

**2**

The district court also held that Lanier failed to establish a prima facie case for retaliation since no reasonable jury could find "a causal connection between her purported disability, or any protected conduct, and her separation."

---

[21] 42 U.S.C. § 12102(1)(A); 29 U.S.C. § 705(20)(B).

[22] 29 C.F.R. § 1630.2(j)(1)(ii).

[23] *See EEOC v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 617 (5th Cir. 2009) ("We conclude that sleeping and thinking are major life activities."); *see also Desmond v. Mukasey*, 530 F.3d 944, 959 (D.C. Cir. 2008) ("[N]othing in the statute suggests that to claim the Act's protection a plaintiff . . . must demonstrate that his impairment affects his work performance in some way or has an ancillary effect on his waking life in general.").

No. 12-10928

A claim of unlawful retaliation required Lanier to show that (1) she engaged in protected activity under the ADA or RA, (2) she suffered an adverse employment action, and (3) a causal connection existed between the protected act and the adverse action.[24] We agree with the district court that Lanier failed to establish a causal connection between her purported disability or request for accommodation and her separation from employment.

There is no evidence in the record that any of Lanier's supervisors were aware that Lanier claimed to be disabled. Kinney, Leary, Pfeiffer, and Gunaasekaran all stated that if Lanier believed she was disabled, she did not inform them. Lanier asserts that Leary was aware of her "disorder" because he "testified that Lanier complained of suffering sleep loss while on her seven-day on-call rotations every couple of weeks." As discussed above, however, Lanier's complaints of sleepiness while on call were insufficient to place UTSW on notice that Lanier was claiming a disability, and Lanier's own testimony established that her requests that UTSW modify the on-call schedule were not tied to any assertion of a disability. Accordingly, there is no evidence from which a reasonable jury could conclude that Lanier's purported disability or request for accommodation was the cause of her separation from employment.

*       *       *

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

[24] *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir. 1999).

10