# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10086

STEPHEN MILLER,

United States Court of Appeals
Fifth Circuit

**FILED**

January 5, 2016

Lyle W. Cayce
Clerk

Plaintiff - Appellant

v.

METROCARE SERVICES, formerly known as Dallas MHMR; KYLE MUNSON; LINDA THOMPSON,

Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before STEWART, Chief Judge, and CLEMENT and ELROD, Circuit Judges.
EDITH BROWN CLEMENT, Circuit Judge:

Stephen Miller sued his former employer, Metrocare Services ("Metrocare"), alleging violations of the FLSA, the FMLA, the ADA, and the Texas Commission on Human Rights Act. Later, Miller amended his complaint to name additional defendants and to add a § 1983 procedural due process claim and a Texas Health & Safety Code § 161.134 claim. The district court dismissed Miller's Texas Health & Safety Code claim via Rule 12(b)(1) and granted summary judgment for the defendants on all other claims. Miller appeals the grant of summary judgment and alleges that the district court erred. Because there is no genuine dispute as to any material fact and the

No. 15-10086

defendants are entitled to judgment as a matter of law on all claims, the district court did not err, and we AFFIRM.

## I.

Metrocare is a local governmental community mental health and mental retardation center in Dallas County, Texas. Metrocare hired Stephen Miller as its Human Resources Manager in February 2006 and later promoted him to HR Director. During the hiring process, Miller submitted to a criminal background check, which revealed that Miller had a conviction in high school. Miller discussed the matter with an employee in the Human Resources Department, who indicated that the conviction was not a bar to employment because it was not on a regulatory list of crimes that would preclude employment by Metrocare.

As HR Director, Miller ensured Metrocare's compliance with federal and state employment laws; updated and ensured compliance with HR policies; handled disputes between managers and line employees; managed the organization's employee benefits programs; and led the agency's compensation and recruiting efforts. Early in his employment, Miller began reevaluating the exemption status of case managers from the FLSA. Each time a position was reclassified, those employees were then required to be paid overtime or compensated time off for their hours worked in excess of 40 hours per week. Given the broad-based consequences of this HR issue to the entire organization, Miller began involving other Metrocare managers—including then-Chief Executive Officer Dr. James Baker—in his discussions with other centers to determine the correct classification of these employees. Metrocare eventually reclassified the case managers to non-exempt status under the FLSA in January 2009.

According to Miller, after the case managers were moved to non-exempt status, he received complaints that employees were being pressured not to

2

record overtime and were working overtime without being compensated for it. From 2009 to 2012, complaints regarding overtime compensation continued. In August 2012, Dr. Baker left Metrocare, and Linda Thompson became the acting CEO of the organization.

In January 2013, Metrocare reduced its workforce as a consequence of a budgetary shortfall. The HR department was required to reduce its ranks, eliminating positions held by benefits analyst Bertha Reyna and HR generalist Sam Clark. According to Metrocare, following the reduction in force, Miller unilaterally canceled a previously scheduled employee Wellness Fair and employee gift card incentive program. The gift card incentive program was reinstated, but the Wellness Fair could not be rescheduled due to third-party vendors being told that it was canceled.

Following the departure of Reyna and Clark, Miller requested an accommodation for his dyslexia. Miller requested a data entry clerk to assist him with benefits work and recommended the rehiring of Reyna. Shortly after Reyna and Clark were laid off, Yolanda Ross, a Miller subordinate and HR generalist, submitted a complaint about Miller to the CFO, Kyle Munson.

Munson investigated the allegations in the complaint and found that Miller excluded himself from annual criminal background checks required by Metrocare. As a public mental health agency, Metrocare is subject to state and federal regulations that bar Metrocare from employing individuals convicted of certain criminal offenses. Accordingly, Metrocare has a criminal background check process to ensure compliance with these regulations. Metrocare runs a one-time, nationwide criminal background check for employment applicants. Thereafter, Metrocare runs an annual criminal background check on each and every current employee. Metrocare's HR Department is responsible for ensuring that both the applicant and the annual employee checks are completed and cleared. While HR Director, Miller would monthly (or as

needed) prepare a list of current employees who were due for an annual background check and give the list to a subordinate to run the check. Miller or Ross would then upload the data to Metrocare's MUNIS system[1] for the employee(s) to reflect that the check had been run and was cleared.

Munson documented his findings in an internal memorandum and concluded that Miller knowingly removed himself from the annual criminal background checklist for 2010, 2011, and 2012 and updated Metrocare's MUNIS record system to indicate the checks had been performed and cleared when they had not been performed. Munson later learned that Miller had also failed to perform background checks on approximately 70 Metrocare employees who were due for a background check in December 2012 and whose records appeared to have been updated in Metrocare's MUNIS system to indicate that the checks had been run and cleared. Munson decided to terminate Miller for his conduct and sent a draft termination letter to outside counsel on February 26, 2013.

On February 28, 2013, Miller placed a letter under Linda Thompson's door asserting various complaints against Metrocare and Munson. Later that day, Metrocare fired Miller. Metrocare's termination letter to Miller listed the falsification of data entries related to the background checks for December 2012 and the use of his position as HR Director to remove his name from criminal background checks in 2010, 2011, and 2012 as factors in his termination.

In March 2013, Miller, through his attorney, requested a "name clearing" hearing where his counsel would be given the opportunity to explain the allegedly wrongful nature of his firing to the Board of Trustees of Metrocare.

---

[1] MUNIS is Metrocare's HR information system, and it contains vital information about Metrocare employees, such as Social Security numbers, health information, criminal background histories, and other sensitive information.

No. 15-10086

Miller requested and received documents and records prior to the hearing. On April 25, 2013, Miller and his attorney attended the hearing, and his attorney presented on his behalf. The Board did not reinstate him.

On May 28, 2013, Miller sued Metrocare, asserting claims under the FLSA, the FMLA, the ADA, and the Texas Commission on Human Rights Act. Specifically, Miller alleged that Metrocare violated 29 U.S.C. § 215(a)—the anti-retaliation provision of the FLSA—by firing him in retaliation for his good-faith complaints about Metrocare's overtime policy, its misclassification of employees, and its failure to pay overtime. Miller alleged a similar retaliation claim and discrimination and interference claims under the FMLA. Miller further alleged that Metrocare violated the ADA and the Texas Labor Code by firing him because of his disability (dyslexia) or his requested accommodation (requesting a data entry clerk to assist him) or complaints regarding Metrocare's failure to fulfill his accommodation request.

On January 23, 2014, Miller amended his complaint to name Thompson and Munson as defendants to the FLSA and the FMLA claims and to add a § 1983 procedural due process claim and a Texas Health & Safety Code § 161.134 claim against Metrocare. Metrocare moved to dismiss the Health & Safety Code claim and the procedural due process claim. While the motion to dismiss was pending, Metrocare moved for summary judgment on all of Miller's claims. The district court granted the motion to dismiss, holding that Metrocare was immune from the Health & Safety Code claim and that Miller failed to plead an actionable procedural due process claim. The district court then allowed Miller to amend his complaint to attempt to plead an actionable procedural due process claim. After he amended his complaint again, Metrocare filed two motions to strike certain evidence and portions of the second amended complaint. The district court granted Metrocare's motion for

5

No. 15-10086

summary judgment on all claims and denied the motions to strike as moot. Miller appealed.

## II.

This court reviews a grant of summary judgment de novo. *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013). Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "We must view all facts and evidence in the light most favorable to the non-moving party when considering a motion for summary judgment." *Juino v. Livingston Parish Fire Dist. No. 5*, 717 F.3d 431, 433 (5th Cir. 2013). This court "may affirm summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 438 (5th Cir. 2012) (citation and internal quotation omitted).

## III.

FLSA, FLMA, and ADA Claims

Miller argues that the district court erred in granting summary judgment in favor of Metrocare on his various claims arising under the FLSA, FMLA, and ADA. While these claims vary in their prima facie elements,[2] none will give rise to any relief where the employer has terminated the employee for valid reasons unrelated to any alleged discriminatory or unlawful motive.[3]

---

[2] *See Hagan v. Echostar Satellite, LLC*, 529 F.3d 617, 624 (5th Cir. 2008) (FLSA retaliation claim); *Lanier v. Univ. of Tex. Sw. Med. Ctr.*, 527 F. App'x 312, 316 (5th Cir. 2013) (FMLA interference claim); *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005) (FMLA retaliation claim); *Feist v. La., Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (ADA failure-to-accommodate claim); and *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014) (ADA discrimination claim).

[3] Miller's ADA failure-to-accommodate claim falls outside of this general statement. But it too does not survive summary judgment. *See Burch v. City of Nacogdoches*, 174 F.3d 615 (5th Cir. 1999). "The ADA does not require an employer to relieve an employee of any essential functions of his or her job, modify those duties, reassign existing employees to

No. 15-10086

Here—even assuming Miller has made out a prima facie case on any of his claims—Metrocare has articulated a legitimate, nondiscriminatory reason for his termination. Miller, as HR director, failed to conduct required criminal background checks on a large number of employees, exempted himself from these same checks, and allowed the records to falsely reflect that the checks had been conducted. As a result, he was fired. Miller has failed to offer sufficient evidence that Metrocare's articulated reason for firing him is a pretext for discrimination.[4] Because Miller did not meet his burden, the district court did not err by granting summary judgment in favor of Metrocare on these claims.[5]

Procedural Due Process Claim

Miller argues that the district court erred in dismissing his procedural due process claim because Metrocare failed to provide an adequate forum to clear his name, failed to provide proper notice of the charges against him, failed to allow Miller to confront key witnesses, and allowed Ross to present secret evidence to the Board of Trustees of Metrocare without notice to Miller.

"Section 1983 provides a civil remedy in federal court for violations, under color of state law, of a person's constitutionally recognized rights, privileges, or immunities." *Bledsoe v. City of Horn Lake*, 449 F.3d 650, 653 (5th

---

perform those jobs, or hire new employees to do so." *Id.* at 621. Data entry was an important component of Miller's position. The fact that Miller had to perform more data entry following the reduction in force, which resulted in two fewer HR employees, was an economic reality caused by Metrocare's financial position. Therefore, no reasonable accommodation was due, let alone Miller's unreasonable request of rehiring an employee who was just fired to reduce costs.

[4] Even under the mixed-motive alternative, Miller does not survive summary judgment for his FMLA retaliation claim. *See Richardson*, 434 F.3d at 332.

[5] Miller purports to appeal the district court's dismissal of his state law claims made under the Texas Labor Code. However, Miller did not brief these claims, so they are waived. "A party waives an issue if he fails to adequately brief it." *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008).

7

Cir. 2006). "If the government discharges an employee amidst allegations of misconduct, the employee may have a procedural due process right to notice and an opportunity to clear his name." *Id.* (citing *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 573 (1972)). "A public employee, even an at-will employee, has a constitutional right to notice and an opportunity to be heard when the employee is 'discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities.'" *Bellard v. Gautreaux*, 675 F.3d 454, 461 (5th Cir. 2012) (quoting *Bledsoe*, 449 F.3d at 653). "Neither damage to reputation alone nor the stigma resulting from the discharge itself trigger the protections of due process." *Bledsoe*, 449 F.3d at 653 (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976); *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 256 (5th Cir. 1984)) (footnote omitted). "Rather, a liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises, only when the employee is 'discharged in a manner that creates a *false and defamatory impression about him* and thus stigmatizes him and forecloses him from other employment opportunities.'" *Id.* (quoting *White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981)) (emphasis added).

This court "employs a seven-element 'stigma-plus-infringement' test to determine whether § 1983 affords a government employee a remedy for deprivation of liberty without notice or an opportunity to clear his name." *Id.* (citing *Hughes v. City of Garland*, 204 F.3d 223, 226 (5th Cir. 2000)). The plaintiff must show: (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request. *Id.*

We question whether Miller was even entitled to a name-clearing hearing because a prerequisite to such a hearing is that Metrocare created a false and defamatory impression about Miller in connection with his firing.[6] Even assuming Miller was entitled to such a hearing, his claim still fails.

Miller argues that he was not given proper notice of the charges against him because the termination letter lists only two reasons for firing him but Metrocare relied on more reasons like his cancellation of the Wellness Fair. The record reflects that Metrocare's key reason for firing Miller was his failure to run the criminal background checks, which was listed in his termination letter. The fact that Miller did not address every allegation of poor performance throughout his work history was not a fault of the hearing or the notice given.

Next, Miller contends that the inability to confront witnesses made the name-clearing hearing insufficient and should allow his § 1983 claim to survive summary judgment. Miller maintains that confrontation of witnesses should be required for an adequate name-clearing hearing.[7] We have never directly addressed this issue. Nevertheless, we decline Miller's invitation to make confrontation of witnesses a mandatory requirement for an adequate name-clearing hearing. Furthermore, the record demonstrates that Miller received sufficient due process at his name-clearing hearing, despite his inability to confront Metrocare employees.[8] Miller, through his attorney, was allowed to

---

[6] "A name-clearing hearing is required only if an employer creates a false and defamatory impression about a particular employee in connection with his termination." *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989) (citing *Codd v. Velger*, 429 U.S. 624 (1976)).

[7] Miller cites *McGhee v. Draper*, 564 F.2d 902, 911-12 (10th Cir. 1977) and *Campbell v. Pierce Cty.*, 741 F.2d 1342, 1345 (11th Cir. 1984). *McGhee* and *Campbell* do not affirmatively state that cross-examination is required in every name-clearing hearing, although cross-examination was required in *McGhee. But see Chilingirian*, 882 F.2d at 206; *Burrell v. Bd. of Trs. for Univ. of Me. Sys.*, 15 F. App'x 5, 6 (1st Cir. 2001).

[8] We do not decide whether confrontation of witnesses is ever required for an adequate name-clearing hearing. We hold only that here Miller received an adequate name-clearing hearing.

No. 15-10086

present at length and was allowed to provide documents to the Board to combat the supposedly false, stigmatizing charges against him. Finally, Miller argues that Ross presented secret evidence to the Board to justify keeping defamatory information in Miller's personnel file. Miller's argument is not supported by the record.

Because Miller received an adequate name-clearing hearing, the district court did not err in dismissing his procedural due process claim.

IV.

For the foregoing reasons, the judgment of the district court is AFFIRMED.