**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 19-20494

United States Court of Appeals
Fifth Circuit

**FILED**
April 30, 2020

Lyle W. Cayce
Clerk

SONIA GARCIA; PHILLIP GARCIA,

> Plaintiffs - Appellants

v.

WESLEY BLEVINS; CITY OF HOUSTON,

> Defendants - Appellees

_____

Appeal from the United States District Court
for the Southern District of Texas

_____

Before SOUTHWICK, COSTA, and DUNCAN, Circuit Judges.

STUART KYLE DUNCAN, Circuit Judge:

Phillip Garcia, Jr. was shot and killed by Houston Police Officer Wesley Blevins in a restaurant parking lot where Blevins was working as a security guard. Garcia's parents sued Blevins, claiming he violated Garcia's constitutional rights. The district court granted summary judgment for Blevins because it determined that, while Blevins may have violated the Constitution, the alleged violation was not clearly established when the shooting occurred. We agree and AFFIRM.

I.

Garcia was with friends at Bombshells Restaurant and Bar in Houston, Texas, after going to a Houston Rockets game. Garcia and some friends got into

an argument with other Bombshells patrons, and eventually restaurant security—including Officer Blevins, who had a department-approved security job at the restaurant—asked them to leave. The groups left, but another scuffle flared up on the restaurant's outdoor patio. Blevins and another security guard again told the group to leave, so the group headed to the parking lot.

The fighting continued in the parking lot. Garcia, who had been challenged to a fight, ran to a friend's parked car. Garcia's opponents followed him. Garcia grabbed a handgun from the back seat of his friend's car in order to "scare" the other men. The approaching group saw the handgun, and at least one of the men tried to rush Garcia. But Garcia fled again and headed back in the general direction of the restaurant.

Meanwhile, Blevins and other guards, having just broken up the fighting, were told by a young woman that someone in the parking lot had a gun. Blevins requested police backup over his radio and went to investigate. Once outside, Blevins saw Garcia. Garcia was holding a t-shirt in his left hand, but Blevins could not see Garcia's right hand. Blevins walked toward Garcia. He saw Garcia move his right hand from behind his back and realized that Garcia was holding a pistol.

Blevins unholstered his own gun and ordered Garcia to drop his. Garcia did not. Instead, he kept walking, passing between two parked vehicles. He then re-emerged and continued walking toward the restaurant's dumpster area. At least two people were standing near the dumpster. Garcia stepped behind one of them (apparently one of his friends) and tried to get the man to take the gun from him. The man refused, stepped away from Garcia, and put his hands up.

There are conflicting stories about what exactly happened next, but it is undisputed that Garcia never disarmed as instructed. Blevins stated that as the man stepped away from Garcia, Garcia raised his gun toward Blevins.

2

No. 19-20494

Another eyewitness, Jesse Santana, stated that Garcia's weapon was pointed down during the entire encounter. Yet another eyewitness, Cesar Gonzalez, recounted that Blevins "said something" to Garcia, and in response Garcia "put his hands up in the air." A third eyewitness, Adam Flores, stated that Garcia did not raise his hands. Regardless of what happened, at this point Blevins "engaged" Garcia. He fired multiple shots, hitting Garcia in the chin, chest, and abdomen. Garcia died on the way to the hospital.

His parents filed this action against the City of Houston and Blevins under 42 U.S.C. § 1983, alleging excessive force under the Fourth and Fourteenth Amendments, as well as municipal liability against the City. They also sought punitive damages. The district court referred the case to a magistrate judge, who recommended the district court grant summary judgment for Blevins and the City. As to Blevins, the magistrate judge concluded that there was a dispute of material fact over whether Blevins used excessive force against Garcia, but that any constitutional violation was not clearly established at the time of the shooting. The district court adopted the magistrate judge's recommendation and granted summary judgment.

The Garcias timely appealed.[1] They argue that genuine fact questions precluded summary judgment and that the law was clearly established. Alternatively, they urge us to revisit this circuit's approach to qualified immunity and abandon the "clearly established" prong.

## II.

"We review a grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor." *Ratliff v. Aransas Cty., Texas*, 948 F.3d 281,

---

[1] On appeal, the Garcias press only the claim against Blevins. They have thus waived any challenge to the summary judgment for the City. *See United States v. Scroggins*, 599 F.3d 433, 446–47 (5th Cir. 2010). The summary judgment for the City is therefore affirmed.

No. 19-20494

287 (5th Cir. 2020) (quoting *Gonzalez v. Huerta*, 826 F.3d 854, 856 (5th Cir. 2016)). The movant must show "there is no genuine dispute as to any material fact and [he is] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "However, a good-faith assertion of qualified immunity alters the usual summary judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *Ratliff*, 948 F.3d at 287 (cleaned up) (quoting *Orr v. Copeland*, 844 F.3d 484, 490 (5th Cir. 2016)). Thus, to avoid summary judgment, the Garcias must point out a genuine dispute of material fact "as to whether [Blevins'] allegedly wrongful conduct violated clearly established law." *McCoy v. Alamu*, 950 F.3d 226, 230 (5th Cir. 2020) (quoting *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010)). "We still draw all inferences in the plaintiff's favor." *Taylor v. Stevens*, 946 F.3d 211, 217 (5th Cir. 2019).

III.

"Qualified immunity protects government officials from civil liability in their individual capacity to the extent that their conduct does not violate clearly established statutory or constitutional rights." *Cass v. City of Abilene*, 814 F.3d 721, 728 (5th Cir. 2016). It shields "all but the plainly incompetent or those who knowingly violate the law." *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). We apply a two-step inquiry. *See Winzer v. Kaufman Cty.*, 916 F.3d 464, 473 (5th Cir. 2019). First, we ask whether the facts alleged, viewed "in the light most favorable to the party asserting the injury," establish that "the officer's conduct violated a constitutional right." *Valderas v. City of Lubbock*, 937 F.3d 384, 389 (5th Cir. 2019) (quoting *Trammel v. Fruge*, 868 F.3d 332, 339 (5th Cir. 2017)). Second, we ask "whether the right was clearly established." *Id.* The Garcias bear the burden of showing that the right was clearly established. *See Cass*, 814 F.3d at 733. We can analyze the prongs in either order or resolve the case on a single prong. *See Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019).

4

No. 19-20494

Because it resolves the case, we begin and end with step two: was the alleged right clearly established at the time of the shooting? The district court determined it was not. We agree.

To be clearly established, a right must be "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, --- U.S. ---, 136 S. Ct. 305, 308 (2015) (per curiam). We cannot "define clearly established law at a high level of generality." *Ashcroft*, 563 U.S. at 742. Rather, the question must be "frame[d] . . . with specificity and granularity." *Morrow*, 917 F.3d at 874–75. We do not require plaintiffs to identify a case "directly on point," but the case law must "place[ ] the statutory or constitutional question *beyond debate*." *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (quoting *Ashcroft*, 563 U.S. at 741). Our inquiry "must be taken in light of the specific context of the case, not as a broad general proposition." *Mullenix*, 136 S. Ct. at 308 (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198–99 (2004)). In excessive-force cases, "police officers are entitled to qualified immunity unless existing precedent *squarely governs* the specific facts at issue." *Morrow*, 917 F.3d at 876 (emphasis added) (quoting *Kisela v. Hughes*, --- U.S. ---, 138 S. Ct. 1148, 1153 (2018) (per curiam)).

The Garcias fail to show Blevins violated clearly established law. It is not enough to argue Garcia had a clearly established right "to be free from deadly force where he was not attempting to flee and did not pose an immediate threat to the officers, nor anyone else." That high level of generality cannot clearly establish the relevant law. *Morrow*, 917 F.3d at 874–85.

The Garcias rely primarily on *Reyes v. Bridgewater*, 362 F. App'x 403 (5th Cir. 2010), to show the law was clearly established. *Reyes* is unpublished, however, and so cannot clearly establish the law. *See McCoy*, 950 F.3d at 233 n.6 (citing *Cooper v. Brown*, 844 F.3d 517, 525 n.8 (5th Cir. 2016)). And *Reyes* would fail to do so in any event. In that decision, we concluded that officers

violated clearly established law by shooting a man who held a kitchen knife, but who did not make a movement towards the officers or any other threatening gestures. *Id.* at 405, 407. We emphasized that a knife is a very different weapon than a gun, which is capable of causing fatal harm instantly at distance. *Id.* at 407. We concluded that no reasonable officer could have concluded that the suspect posed an immediate danger of harm, and thus deadly force was excessive. *Id.* Here, by contrast, Garcia was holding a gun, which he could at any time have turned on Blevins or any of the other individuals in the parking lot. *Reyes* thus provides no help to the Garcias' case.

While not cited by the Garcias, our recent *en banc* decision in *Cole v. Carson* is also distinguishable. In that case, while searching in the woods, officers suddenly confronted a teenager holding a gun to his head and shot him. 935 F.3d 444, 454–55 (5th Cir. 2019) (en banc). We explained that it violated clearly established law in 2010 for police to shoot someone who—though pointing a gun at his own head—made no threatening movements toward the officers, was facing away from the officers, was not warned by the officers even though there was opportunity to do so, and may have been unaware of the officers' presence. *Id.* Here, by contrast, it is undisputed Garcia was aware of Blevins' presence and that Blevins ordered Garcia to put down his weapon, but Garcia refused to do so. Those facts take this case beyond the contours of clearly established law at the time of the shooting.[2]

---

[2] *Cole* relied on *Baker v. Putnal*, 75 F.3d 190 (5th Cir. 1996), but *Baker* is also distinguishable. In *Baker*, gunfire erupted on a crowded beach and police officers were directed to a vehicle where the suspect was sitting. *Id.* Viewing the facts favorably to the plaintiffs, the suspect made no threatening move, was not holding a gun, and "may have barely had an opportunity to see [the officer] before [the officer] fired his gun." *Id.* at 198. We held that "[c]haos on the beach and [the suspect's] mere motion to turn and face [the officer] are not compelling reasons to find that [the officer's] use of force was not excessive as a matter of law." *Id.* This case is quite different: it is undisputed that Garcia knew of Blevins' presence, that Blevins ordered Garcia to drop the gun, and that Garcia was holding the weapon in such a way that he could have turned it quickly on Blevins.

No. 19-20494

"[P]olice officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 397 (1989). For that reason, we judge the reasonableness of the force used "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight," *id.*, and we avoid "second-guessing a police officer's assessment, made on the scene, of the danger presented by a particular situation. *Valderas*, 937 F.3d at 389 (quoting *Ryburn v. Huff*, 565 U.S. 469, 477 (2012)).

Blevins, having just twice broken up fighting in the restaurant in which Garcia was involved, was told someone in the parking lot had a gun. He saw Garcia walking, gun in hand, towards other people in the parking lot. Garcia ignored Blevins' commands to drop the weapon, first ducking between parked vehicles and then trying to give the gun to someone else. Even under Plaintiffs' version of events, it is undisputed that—although he may have put his hands up at some point—Garcia refused to drop the gun when ordered to do so, and he could have quickly turned it on Blevins. "[W]e have never required officers to wait until a defendant turns towards them, with weapon in hand, before applying deadly force to ensure their safety." *Salazar-Limon v. City of Houston*, 826 F.3d 272, 279 n.6 (5th Cir. 2016), *as revised* (June 16, 2016). Here, we cannot say the law was "*so* clearly established that—in the blink of an eye . . .— every reasonable officer would know it immediately." *Morrow*, 917 F.3d at 876. We therefore hold Blevins is entitled to qualified immunity because he did not violate clearly established law.

## IV.

The Garcias also assert that, if we conclude the law was not clearly established, we should reconsider our approach to qualified immunity. As a panel of this court, however, we are bound by the precedential decisions of both

No. 19-20494

our court and the Supreme Court. *See Vaughan v. Anderson Reg. Med. Ctr.*, 849 F.3d 588, 591 (5th Cir. 2017). Those cases set forth the qualified immunity analysis we apply today, and we are bound to follow them.

\* \* \*

The judgment of the district court is AFFIRMED.