# United States Court of Appeals for the Fifth Circuit

No. 20-40082

United States Court of Appeals
Fifth Circuit

**FILED**

December 18, 2020

Lyle W. Cayce
Clerk

BRANDIE CUNNINGHAM,

*Plaintiff—Appellee*,

*versus*

THOMAS CASTLOO,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 6:19-CV-18

Before JOLLY, SOUTHWICK, and WILSON, *Circuit Judges*.

E. GRADY JOLLY, *Circuit Judge*:

This interlocutory appeal presents the question whether Sheriff Thomas Castloo enjoys qualified immunity from Brandie Cunningham's 42 U.S.C. § 1983 claims premised on the denial of a name-clearing hearing in violation of procedural due process. The district court answered no. Citing factual disputes, and holding that Cunningham's right to a name-clearing hearing was clearly established, the district court denied qualified immunity on summary judgment. The district court's holding was error. Because "the violative nature" of Sheriff Castloo's "*particular* conduct" was not clearly established, *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (per curiam), Sheriff Castloo may claim qualified immunity. Accordingly, we REVERSE the denial of qualified immunity and REMAND for further proceedings not inconsistent with this opinion.

No. 20-40082

I

As laid out above, Sheriff Castloo appeals a summary judgment denying him qualified immunity from this lawsuit. In our review, then, we take Cunningham's version of the facts as true. *See Kinney v. Weaver*, 367 F.3d 337, 347–48 (5th Cir. 2004) (en banc).

Brandie Cunningham joined the Wood County Sheriff's Office as a deputy in April 2016. Before that, she worked at the Hopkins County Jail. And before that, she worked as a mental health specialist in the military. Her military duties included reviewing discharge forms, known as DD214s.[1]

During Cunningham's stint at the Hopkins County Jail, one of her superiors had asked her to review the DD214 of a jailer named David McGee. Cunningham concluded, based on her military experience, that the DD214 was "altered."

Like Cunningham, McGee moved from Hopkins County to Wood County. By January 2017, he had become a supervisor at the Wood County Jail. His friend, Thomas Castloo, had taken office as Wood County Sheriff on January 1. The events that led to this litigation occurred over a one-week period, beginning on Wednesday, January 18.

On Wednesday the 18th, Cunningham approached Tony Crouse, a Wood County criminal investigator, and asked how she could "go about filing a federal crime." She believed that she had an obligation to report that, in her opinion, McGee's DD214 had been altered. Crouse told Cunningham to bring her concerns to Sheriff Castloo.

On Thursday the 19th, Cunningham and Crouse met with Sheriff Castloo. Cunningham told Sheriff Castloo that she suspected that McGee had altered his DD214. She did not think she was violating her chain of

---

[1] According to the district court, "[t]he DD214 is a discharge form used by all branches of the United States Military and has the same function as the F-5 discharge form for law enforcement agencies. It indicates whether a servicemember separating from military service is being released with an honorable, general, or dishonorable discharge."

command by bringing her concerns to Crouse and Sheriff Castloo. She spoke to Crouse first because she knew him from Hopkins County. And she spoke to Sheriff Castloo next because Crouse "instructed" her to do so and because she thought that Sheriff Castloo was McGee's supervisor. After the meeting, Cunningham told her chain of command what she had reported. She also told at least one person outside her chain of command—Deputy Justin Bowring.

On Friday the 20th, Cunningham met with Sheriff Castloo and Chief Deputy Bobby Sanders. Sheriff Castloo called Cunningham a "liar" and said that "the only reason" she "was doing this to McGee was because [she] hated him." Sheriff Castloo asked her "numerous times" how many people she had told about her suspicion that McGee had altered his DD214. She gave Sheriff Castloo the names of everyone she told within her chain of command. Because Sheriff Castloo was yelling at her, however, she says that she forgot that she had told Deputy Bowring. Neither Sheriff Castloo nor Chief Deputy Sanders told Cunningham that she was under investigation for lying and violating the chain of command.

Later that day, Cunningham remembered that she had told Deputy Bowring of her suspicion that McGee had altered his DD214. So she sent a text message to Captain Robert Holland, "asking if [she] could meet with the [S]heriff because [she] needed to tell him more information." Captain Holland remained silent.

That night, Cunningham received a call from Lieutenant William Burge. Lieutenant Burge told her to report to Sheriff Castloo's office on Monday morning. She asked Lieutenant Burge if she "was going to be able to speak with" Sheriff Castloo. Lieutenant Burge responded that she "was not allowed to speak with the [S]heriff that day," but she could speak to him on Monday morning.

On the morning of Monday the 23rd, Cunningham met with Chief Deputy Sanders, Lieutenant Burge, and Captain Holland. Thereupon, she was fired for "improper use of chain of command and lying." She was not

told how she had lied or how her "use" of the chain of command was "improper." She "ask[ed] to speak with the [S]heriff at that time," but "they would not allow [her] to talk to him." She did not receive a written notice describing the charges against her, nor was she "allowed" to respond to the oral charges made against her. When she tried to speak, Chief Deputy Sanders cut her off, saying, "I don't need to hear anything further from you . . . ."[2]

The next day, Sheriff Castloo signed Cunningham's F-5. The F-5 is filed with the Texas Commission on Law Enforcement and indicates the nature of an officer's discharge: honorable, dishonorable, or general. Sheriff Castloo designated the discharge as "dishonorable," which is the "only option" when the employee is "found guilty of either lying or lack of clarity." Since Cunningham was dishonorably discharged, she has not found further work.

Cunningham sued Wood County and Sheriff Castloo—in his individual and official capacities—in federal court under 42 U.S.C. § 1983. She alleged that Sheriff Castloo violated, among other rights, her Fourteenth Amendment right to procedural due process by denying her request for a name-clearing hearing. Sheriff Castloo claimed qualified immunity.

After discovery, the parties cross-moved for summary judgment. The district court denied Cunningham's motion in full and granted Wood County and Sheriff Castloo's motion in part, dismissing all but the procedural-due-process claims against Sheriff Castloo and Wood County. Although Sheriff Castloo raised a qualified-immunity defense to that claim, the district court held that Cunningham had "successfully rebutted" it. The district court said that factual disputes, when resolved in Cunningham's favor, established a

---

[2] Two days after Cunningham was fired, Texas Rangers arrested McGee for altering government documents, among other felonies. The arrest was not for altering the DD214 that Cunningham considered altered.

procedural-due-process violation and satisfied qualified-immunity's constitutional-violation prong.  Qualified immunity's clearly established prong was met, the district court reasoned, because *Wisconsin v. Constantineau*, 400 U.S. 433 (1971), and *Bledsoe v. City of Horn Lake*, 449 F.3d 650 (5th Cir. 2006), had "placed beyond debate" Cunningham's "liberty interest in the opportunity to clear her name of stigmatizing charges."

Sheriff Castloo timely filed this interlocutory appeal.[3]

## II

We begin with our jurisdiction and the standard of review.  Sheriff Castloo challenges the denial of qualified immunity on summary judgment.  That denial is immediately appealable under the collateral-order doctrine to the extent that it turned on an issue of law.  *Melton v. Phillips*, 875 F.3d 256, 261 (5th Cir. 2017) (en banc).  We lack jurisdiction to review the *genuineness* of the factual disputes the district court identified, but we have jurisdiction to review their *materiality*.  *Id.*  That means "our review is limited to determining whether the factual disputes that the district court identified are material to the application of qualified immunity."  *Samples v. Vadzemnieks*, 900 F.3d 655, 660 (5th Cir. 2018) (emphasis omitted) (citing *Thompson v. Upshur Cnty.*, 245 F.3d 447, 456 (5th Cir. 2001)).  We review legal conclusions, materiality determinations, and the scope of clearly established law de novo.  *Amador v. Vasquez*, 961 F.3d 721, 727 (5th Cir. 2020) (citations omitted).

In determining materiality, we take Cunningham's version of the facts as true and view those facts through the lens of qualified immunity.  *See Samples*, 900 F.3d at 660.  If Sheriff Castloo would still be entitled to qualified immunity under this view of the facts, then any disputed facts are not material, the district court's denial of summary judgment was improper, and

---

[3] Although the notice of appeal is entitled "Defendants' Notice of Appeal," the body of the document makes clear that only Sheriff Castloo appeals.  Wood County is not a party to this appeal but remains a defendant in the underlying case.  The district court administratively closed that case pending disposition of this interlocutory appeal.

we must reverse.  *See Lytle v. Bexar Cnty.*, 560 F.3d 404, 409 (5th Cir. 2009).

These precepts are clear, though perhaps less so to Cunningham.  She contends that we lack jurisdiction because the district court *said* that it found genuine disputes of material fact.  Not so.  The mere fact that the district court said that, in its view, material factual disputes preclude summary judgment does not deprive us of interlocutory appellate jurisdiction.  *See, e.g.*, *Shaboon v. Duncan*, 252 F.3d 722, 729 (5th Cir. 2001) ("Although the district court explicitly stated that material fact issues remain . . . this in itself does not preclude appellate review.").  We may of course decide whether the factual disputes the district court said were material are in fact material.  *See Melton*, 875 F.3d at 261.

Assured of our jurisdiction, we turn to the merits.

## III

Sheriff Castloo contends the district court erred in denying him qualified immunity on summary judgment.  We begin with the doctrine of qualified immunity.  We next lay out the underlying substantive law that dictates whether Sheriff Castloo is entitled to the defense.  We last apply the substantive law and doctrine to the facts of this case.

## A

Qualified immunity shields government officials from civil liability in their individual capacity so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  It "protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Mullenix*, 577 U.S. at 12 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Our qualified-immunity inquiry is two-pronged.  *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020).  First, we ask whether the facts, viewed in the light most favorable to the party asserting the injury, show that the official's conduct violated a constitutional right.  *Id.*  Second, we ask whether the right

was "clearly established." *Id.* We "can analyze the prongs in either order or resolve the case on a single prong." *Id.*

The "clearly established" prong is difficult to satisfy. *See Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). A right is "clearly established" only if it "is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix*, 577 U.S. at 11. We must define the right "with specificity." *City of Escondido v. Emmons*, 139 S.Ct. 500, 503 (2019) (per curiam) (citation and quotation marks omitted). A case "directly on point" is not required, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). In other words, "there must be adequate authority at a sufficiently high level of specificity to put a reasonable official on notice that his conduct is definitively unlawful." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015) (citation omitted). This rule is a "demanding standard," *Dist. of Columbia v. Wesby*, 138 S.Ct. 577, 589 (2018) (citation omitted), and the Supreme Court "repeatedly" has told us "not to define clearly established law at a high level of generality." *al-Kidd*, 563 U.S. at 742. Ultimately, "[t]he dispositive question is whether the violative nature of the *particular* conduct is clearly established." *Mullenix*, 577 U.S. at 12 (citation omitted). We undertake that inquiry "in [the] light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)).

When an official raises qualified immunity on summary judgment, as Sheriff Castloo did here, the plaintiff bears the burden of showing that the defense does not apply. *See Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020). To meet that burden, the plaintiff must present evidence, viewed in her favor, satisfying both qualified-immunity prongs by showing that the defendant (1) violated a constitutional right (2) that was clearly established at the time of the defendant's conduct. *See id.* We turn now to examine whether Cunningham has made such a showing.

No. 20-40082

B

The Fourteenth Amendment is the source of the substantive law that dictates whether Sheriff Castloo is entitled to qualified immunity. *See* U.S. CONST. amend. XIV. In *Rosenstein v. City of Dallas*, we relied on Supreme Court cases interpreting the Fourteenth Amendment to recognize a government employee's procedural-due-process right to a name-clearing hearing in certain circumstances. 876 F.2d 392, 395 (5th Cir. 1989). We declared it "beyond any doubt" that "discharge from public employment under circumstances that put the employee's reputation, honor[,] or integrity at stake gives rise to a liberty interest under the Fourteenth Amendment to a procedural opportunity to clear one's name." *Id.* at 395 (citations omitted). We said that a government employer deprives an employee of liberty under the Fourteenth Amendment if the "government employer discharges [the] individual under circumstances that will do special harm to the individual's reputation and fails to give that individual an opportunity to clear his name[.]" *Id.*

We further confected a seven-element "stigma-plus-infringement" test to determine whether a government employer violates a discharged employee's procedural-due-process rights by denying her request for a name-clearing hearing. *See id.* at 395–96; *Bledsoe*, 449 F.3d at 653. To prevail under that test, the discharged employee must show that (1) she was discharged; (2) stigmatizing charges were made against her in connection with the discharge; (3) the charges were false; (4) she was not provided notice or an opportunity to be heard pre-discharge; (5) the charges were made public; (6) she requested a hearing to clear her name; and (7) the employer denied the request. *Bledsoe*, 449 F.3d at 653.

C

Thus, against this background of qualified immunity and the substantive law of the Fourteenth Amendment, we move further to address the merits of this case. The district court concluded that, on the facts as viewed most favorably to Cunningham, Sheriff Castloo violated

Cunningham's clearly established procedural-due-process right by denying her request for a name-clearing hearing.  The district court said that Cunningham had a clearly established right to "clear her name of stigmatizing charges."  Clearly establishing that right, in the district court's view, were two decisions: *Constantineau*, 400 U.S. at 437, and *Bledsoe*, 449 F.3d at 653.  The district court read *Constantineau* to clearly establish a government employee's right to "notice and an opportunity to be heard" when that employee's "good name, reputation, honor, or integrity is at stake because [of] government action[.]"  And the district court read *Bledsoe* to clearly establish an employee's "procedural due process right to notice and an opportunity to clear [her] name" if the employee meets the seven-element "stigma-plus-infringement" test.

The cited cases, however, do not reflect clearly established law under the facts presented in *this* case.  Neither *Constantineau* nor *Bledsoe* "clearly prohibit[ed] the [Sheriff's] conduct in the particular circumstances before him."  *Wesby*, 138 S.Ct. at 590.

*Constantineau* is far afield.  400 U.S. at 434.  That case involved a constitutional challenge to a state law allowing the public posting, without notice or a hearing, of notices forbidding the sale of alcohol to particular individuals.  *Id.* at 434–35.  Besides articulating general principles of procedural due process, that case has no application to this one.  *Id.*; *see, e.g.*, *Vincent*, 805 F.3d at 547 (explaining that "abstract or general statements of legal principle untethered to analogous or near-analogous facts are not sufficient to establish a right 'clearly' in a given context").

*Bledsoe* is also unhelpful to Cunningham's case.  449 F.3d at 651.  In *Bledsoe*, we affirmed a summary judgment dismissing a procedural-due-process claim premised on the alleged denial of a request for a name-clearing hearing, holding that the plaintiff never requested such a hearing.  *Id.* at 655.  We found no procedural-due-process violation.  *Id.*  So *Bledsoe*—even if it

were factually similar (and it is not)[4]—is incapable of providing "fair notice" of a procedural-due-process violation. *See Morrow*, 917 F.3d at 875 (explaining that "clearly established law comes from holdings").

The district court's reliance on broad pronouncements from *Constantineau* and *Bledsoe* evinces a methodological error: It defined clearly established law too generally for any controlling relevance in this case. Courts must "frame the constitutional question with specificity and granularity." *Morrow*, 917 F.3d at 874–75. The district court did not do that. Instead, the district court appears to have asked whether, generally, the procedural-due-process right to a name-clearing hearing was clearly established. That wording is the wrong way to frame the question, as the Supreme Court repeatedly has told us. *See, e.g.*, *Emmons*, 139 S.Ct. at 503–04 (reversing Ninth Circuit for framing clearly established law too generally); *Kisela v. Hughes*, 138 S.Ct. 1148, 1154–55 (2018) (per curiam) (same); *Wesby*, 138 S.Ct. at 593 (same, D.C. Circuit); *White v. Pauly*, 137 S.Ct. 548, 552–53 (2017) (per curiam) (same, Tenth Circuit); *Mullenix*, 577 U.S. at 18–19 (same, this court); *Carroll v. Carman*, 574 U.S. 13, 20 (2014) (per curiam) (same, Third Circuit); *Reichle v. Howards*, 566 U.S. 658, 670 (2012) (same, Tenth Circuit); *al-Kidd*, 563 U.S. at 743–44 (same, Ninth Circuit).

"The dispositive question," we emphasize, is whether "the violative nature of *particular* conduct is clearly established." *Mullenix*, 577 U.S. at 12. The answer here is no.

To further explain that compact response, we begin by describing the

---

[4] *Bledsoe* arose from a city fire chief's forced resignation after he was accused of altering time sheets, brandishing a firearm in his office, and falsifying reports. 449 F.3d at 652. Before he was forced to resign, the city's board of aldermen questioned him during a meeting; he "largely" denied the alleged misconduct. *Id.* Days after that meeting, the board of aldermen convened another—this time, behind closed doors and without the fire chief. *Id.* The fire chief found out about the closed-door meeting "shortly before it was to occur." *Id.* Obviously concerned, he "asked the board to either postpone the meeting until his attorney could be with him or to record the proceedings." *Id.* This request, we held, did not constitute a request for a name-clearing hearing under the "stigma-plus-infringement" test. *Id.* at 653.

No. 20-40082

particular conduct for which Cunningham seeks to hold Sheriff Castloo liable. *See Wesby*, 138 S.Ct. at 590. Sheriff Castloo's subordinates—Chief Deputy Sanders, Lieutenant Burge, and Captain Holland—met with Cunningham and fired her for "improper use of chain of command and lying," without further explanation. In response, Cunningham asked "to speak with the Sheriff," but Sheriff Castloo's subordinates did not "allow" her to do so. Sheriff Castloo was not present at the meeting, and there is no evidence that he instructed his subordinates to deny Cunningham's request "to speak with" him.

Having first described Sheriff Castloo's particular conduct, as reflected by the summary-judgment record and viewed in Cunningham's favor, we now ask whether the "violative nature," vis-à-vis the Constitution, was clearly established. *See Mullenix*, 577 U.S. at 12.

We conclude that it was not.[5] Specifically, the law was not clearly established that Cunningham's request "to speak with" Sheriff Castloo constituted a request for a name-clearing hearing in the context of our "stigma-plus-infringement" test, such that denying the request would amount to a procedural-due-process violation. Our cases are quite unclear, even confusing, on what constitutes a request for a name-clearing hearing. *Compare Bledsoe*, 449 F.3d at 653–54 *with Rosenstein*, 876 F.2d at 396. What is clear, however, is that none of our cases—and certainly none from the Supreme Court—holds that an employee requests a name-clearing hearing, triggering procedural-due-process protections, when she asks only "to speak with" her boss in the context of her discharge. Of importance, granting

---

[5] Like the district court, Cunningham offers only general statements of legal principle, unmoored from the facts of this case, in her attempt to satisfy the clearly established law requirement. None of the cases she cites speaks to the specific and dispositive question we decide today, i.e., whether it was clearly established, at the time of Sheriff Castloo's conduct, that a public official violates a discharged employee's procedural-due-process right when one of the public official's subordinates, acting without instruction from the official and outside the official's presence, denies the discharged employee's request "to speak with" the official.

Cunningham's request "to speak with" Sheriff Castloo would not have provided Cunningham a "public forum" of any sort; it would have resulted only in a private audience with Sheriff Castloo. *See Bledsoe*, 449 F.3d at 654. That fact alone distinguishes this case from *Rosenstein*, in which case "[t]he appeals procedure would [have] provide[d] the officer 'with a public forum to clear his name before the governing body that discharged him.'" *Id.* (quoting *Rosenstein*, 876 F.2d at 396).

All told, Cunningham has failed to cite "adequate authority at a sufficiently high level of specificity" to put Sheriff Castloo "on notice that his conduct is definitively unlawful." *Vincent*, 805 F.3d at 547 (citing *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (en banc)). She therefore failed to satisfy her burden of defeating Sheriff Castloo's claim of qualified immunity. Sheriff Castloo is entitled to qualified immunity, and the district court erred in denying that defense.

## IV

We sum up. In this opinion, we have fully accepted Cunningham's version of the summary-judgment record as true. We have held that, even under this view of the record, Sheriff Castloo is entitled to qualified immunity. The law was not clearly established that Sheriff Castloo's particular conduct violated Cunningham's procedural-due-process right to a name-clearing hearing. Because the alleged violative nature of Sheriff Castloo's conduct was not clearly established as unconstitutional, we REVERSE the district court's denial of qualified immunity and REMAND the case to the district court for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.