# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 16, 2023

Lyle W. Cayce
Clerk

No. 22-30490

Katelynn McLin,

*Plaintiff—Appellant*,

*versus*

Twenty-First Judicial District; Robert H. Morrison, III,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:21-CV-411

---

Before Higginbotham, Graves, and Douglas, *Circuit Judges*.

Patrick E. Higginbotham, *Circuit Judge*:

In this employment dispute, the district court dismissed with prejudice a suit brought by Katelynn McLin against the Louisiana Twenty-First Judicial District and its former Chief Judge Robert Morrison, concluding that: (1) the Twenty-First Judicial District lacked the capacity to be sued; (2) McLin failed to plausibly allege that she was treated differently from anyone else; and, (3) Chief Judge Morrison was entitled to qualified immunity. McLin now appeals. We AFFIRM.

No. 22-30490

## I.

## A.

McLin is a White female previously employed by Louisiana's Twenty-First Judicial District.[1] On November 13, 2020, McLin attended a clerical staff luncheon convened by the Twenty-First Judicial District. During the luncheon, the Judicial Administrator Sara Brumfield publicly praised McLin for her work performance. McLin sat next to T.D. at the luncheon, a Black colleague whom she had never met. At the end of the lunch, McLin stated that it was "time to go back to LP and deal with the LPians." McLin alleges that "LPians" refers to citizens of Livingston Parish, and that she did not use that term "objectively or intend[ing] to be offensive, racially charged, or antagonistic in any possible sense." The Parties do not suggest the use of "LPians" has any racial connotation. Accepting Plaintiff's pleading as true, it either lacks a racial element or none was intended. Yet the comment prompted T.D. to search for McLin's social media.

While searching through McLin's Facebook posts, T.D. noticed an article McLin reposted regarding a motorist on I-244 who drove his vehicle and horse trailer through a blockade of protestors rallying in the wake of George Floyd's murder. In the post, McLin, who herself keeps and trains horses and drives a truck with a horse trailer, posted "All I'm going to say is

---

[1] Her employment was "at will" and "may be terminated by either the Court or the employee at any time, for any reason not prohibited by law." McLin began her career with the Twenty-First Judicial District as a collection's department collector. At the time of her termination, she had been promoted to a Hearing Officer's Secretary.

No. 22-30490

that Silver Duramax enjoys pulling that black horse trailer at 80mph 🥴#IWillrunYouOver."[2]

T.D. complained about the Facebook post and the use of the term "LPians" to her supervisor, Judge Blair Edwards. Judge Edwards then brought the complaint to Chief Judge Morrison, who terminated McLin's employment. Chief Judge Morrison asked Brumfield to process the termination of employment, and Brumfield, in turn, told McLin that she "hate[d] having to do this" but that she "had no other choice" as her "hands are tied." McLin then confronted Chief Judge Morrison who confirmed that his decision to terminate her was based on the Facebook post and comment to T.D., observing that "[i]n today's world that we live in, I have no other choice but to terminate you. You need to watch what you say and do."

**B.**

In April 2021, McLin filed a charge of discrimination with the Equal Employment Opportunity Commission alleging that the Twenty-First Judicial District unlawfully terminated her based on her race in violation of Title VII, and the EEOC issued a right to sue letter. This suit in the Middle District of Louisiana followed, with: (1) a disparate treatment claim based on race in violation of Title VII against the Twenty-First Judicial District, (2)

---

[2] We note that the Twenty-First Judicial District did not have any rules or policies restricting employees from engaging in political speech via social media, and the only Twenty-First Judicial District policy concerning political speech prohibited employees from publicly endorsing political candidates for office. McLin alleges that her post was such a political opinion.

No. 22-30490

§ 1981 and § 1983 claims of disparate treatment based on race against Chief Judge Morrison, (3) a claim of unlawful termination for "political activity" in violation of Louisiana state law against the Twenty-First Judicial District, and (4) a § 1983 claim of unlawful termination in retaliation for engaging in protected speech in violation of the First Amendment to the U.S. Constitution against Chief Judge Morrison.

The district court dismissed all claims under Rules 12(b)(1) and 12(b)(6), holding that the Twenty-First Judicial District lacked the capacity to be sued, that Chief Judge Morrison was entitled to qualified immunity, and the Complaint failed to state a claim. McLin timely appealed.

## II.

We review the district court's grant of a 12(b)(1) motion to dismiss de novo.[3] Rule 12(b)(1) motions challenge the subject matter jurisdiction of the district court,[4] with the burden of proof on the party asserting jurisdiction.[5] When a Rule 12(b)(1) motion is filed with other Rule 12 motions, the court first considers its jurisdiction.[6]

We review the grant of a motion to dismiss under Rule 12(b)(6) de novo, "accepting all well-pleaded facts as true and viewing those facts in the

---

[3] *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

[4] *Id.*

[5] *Id.*

[6] *Id.*

No. 22-30490

light most favorable to the plaintiffs."[7] A complaint survives a Rule 12(b)(6) motion only if it "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8]

Finally, we review denials of motions to amend for abuse of discretion,[9] but "where the district court's denial of leave to amend was based solely on futility, this court applies a de novo standard of review 'identical, in practice, to the standard used for reviewing a dismissal under Rule 12(b)(6).'"[10] It is not an abuse of discretion to deny the motion to amend if it would not survive a Rule 12(b)(6) motion.[11]

## III.

McLin first argues that whether she sued a judicial district instead of a district court is only a matter of semantics.[12] We disagree. Regardless of

---

[7] *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008) (quotation omitted).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[9] *Stem v. Gomez*, 813 F.3d 205, 209 (5th Cir. 2016).

[10] *Thomas v. Chevron U.S.A., Inc.*, 832 F.3d 586, 590 (5th Cir. 2016) (quoting *City of Clinton v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152 (5th Cir. 2010)).

[11] *Stem*, 813 F.3d at 216.

[12] On the other hand, the Twenty-First Judicial District argues that makes all the difference, as "the judicial districts are just geographical areas. The district courts, on the other hand, are subject to the control, oversight, and funding of numerous other public entities." McLin contends that this is "an argument without much relevance because, first, these are really the same entity, and, second, if this Court were to find the Judicial District *Court* was capable of being sued based on the merits arguments below, but not the Judicial

No. 22-30490

whether McLin sued the Twenty-First Judicial District or the Twenty-First Judicial District Court, the suit fails because both entities lack *juridical personality* under Louisiana law.

Under Federal Rule of Civil Procedure 17(b), Louisiana state law governs the capacity of a state district court to be sued.[13] By its metric, capacity belongs to a juridical person. The term is defined as "an entity to which the law attributes personality, such as a corporation or a partnership."[14] The Louisiana Supreme Court set forth a framework for determining an entity's juridical status in *Roberts v. Sewerage and Water Bd. of New Orleans*.[15] The *Roberts* court held that:

> The important determination with respect to the juridical status or legal capacity of an entity is not its creator, nor its size, shape, or label. Rather the determination that must be made in each particular case is whether the entity can appropriately be regarded as an additional and separate government unit for the particular purpose at issue. In the absence of positive law to the contrary, a local government unit may be deemed to be a juridical person separate and distinct from other government entities, when the organic law grants it the legal capacity to function independently and not just as the agency or division of another governmental entity.[16]

---

*District*, plaintiff repeats her request originally made to the district court for leave to amend her complaint to make that change."

[13] *See* Fed. R. Civ. P. 17(b) ("Capacity to sue or be sued is determined . . . by the law of the state where the court is located[.]").

[14] La. Civ. Code Ann. art. 24.

[15] 634 So.2d 341 (La. 1994).

[16] *Id.* at 346–47.

Where there is no constitutional or statutory authority for an entity to sue or be sued, it lacks capacity under *Roberts*.[17] The Louisiana Constitution organizes Louisiana's government into three separate branches, legislative, executive, and judicial.[18] Louisiana's district courts are created by the Louisiana Constitution as component parts of a unified state system. Under that system, the Twenty-First Judicial District is not a separate entity. It is a part of the greater body of the Judicial Branch of Louisiana's state government.[19]

The legislature did not classify judicial districts as political subdivisions for all purposes, as it limited the classification to a particular revenue statute.[20] McLin's comparing the Twenty-First Judicial District to "Fire Protection Districts" or "Hospital Service Districts" is unavailing as the legislature granted the latter two districts the right "to sue and be sued."[21] In creating specific *types* of districts capable of suit and not others, it implicitly chose *not* to make judicial districts separate entities.[22] Having "district" in their name does not alone give them juridical status. The district

---

[17] *Id.*

[18] *See* La. Const. art. II.

[19] *See Roberts*, 634 So.2d at 346–47.

[20] *See* La. Rev. Stat. Ann. § 49:308.

[21] *See* La. Rev. Stat. Ann. § 40:1500(A); La. Rev. Stat. Ann. § 46:1060.

[22] *Colgrove v. Battin*, 413 U.S. 149, 163 (1973) ("If [Louisiana] had meant to . . . [effectuate the desired scheme] . . . 'it knew how to use express language to that effect.' " (quoting *Williams v. Florida*, 399 U.S. 78, 97 (1970))); *see also NLRB v. Canning*, 573 U.S. 513, 600 (2014) (Scalia, J., concurring) ("If the [legislature] had thought [to enact a given scheme], they would have known how to do so.").

No. 22-30490

court did not err in holding the Twenty-First Judicial District lacks the capacity to be sued.[23]

## IV.

Turning to the claims against Chief Judge Morrison, McLin argues that the district court erred in dismissing her § 1981 and Title VII claims. We affirm the district court, but upon a different ground.[24]

Our "analysis of discrimination claims under § 1981 is identical to the analysis of Title VII claims."[25] McLin alleges disparate treatment, which "addresses employment actions that treat an employee worse than others based on the employee's race, color, religion, sex, or national origin."[26] McLin rests her claims on being a White female.

The district court dismissed the claims, explaining that "Plaintiff does not allege any direct evidence of [Chief] Judge Morrison's discriminatory motive . . . and therefore must prove her case through circumstantial

---

[23] Since we conclude the Twenty-First Judicial District lacks the capacity to be sued and is instead properly considered a part of the Judicial Branch of Louisiana state government, allowing McLin to amend her complaint to bring her claims against Louisiana would be futile. The Eleventh Amendment bars McLin's state-law claim for political discrimination arising under La. Rev. Stat. Ann. § 23:961. *See Richardson v. S. Univ.*, 118 F.3d 450, 453 (5th Cir. 1997). And while Congress abrogated the states' Eleventh Amendment immunity for Title VII purposes, *see Ussery v. State of La. on Behalf of La. Dep't of Health & Hosps.*, 150 F.3d 431, 434 (5th Cir. 1998), as explained below, McLin fails to state a claim of racial discrimination under Title VII. *See* Section IV.

[24] *See Asadi v. G.E. Energy (USA), L.L.C.*, 720 F.3d 620, 622 (5th Cir. 2013) (noting that this Court "may affirm [a Rule 12(b)(6) motion] on any basis supported by the record" (citation omitted)).

[25] *Body by Cook, Inc. v. State Farm Mut. Auto Ins.*, 869 F.3d 381, 386 (5th Cir. 2017).

[26] *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006).

evidence, according to the burden-shifting framework established by . . . *McDonnell Douglas*."[27]

We disagree. A complaint need not allege "each prong of the *prima facie* test for disparate treatment" in order to overcome a Rule 12(b)(6) motion; rather, to support a disparate treatment claim under Title VII, a complaint must plausibly set out facts that the "defendant took the adverse employment action against a plaintiff *because of* her protected status."[28] As we have previously summarized:

> [T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because* of her protected status. . . . We reiterate, however, that a court errs by requiring a plaintiff to plead something more than the "ultimate elements" of a claim. A court thus inappropriately heightens the pleading standard by subjecting a plaintiff's allegations to a rigorous factual or evidentiary analysis under the *McDonnell Douglas* framework in response to a motion to dismiss.[29]

---

[27] *McLin v. Twenty-First Jud. Dist.*, 614 F. Supp. 3d 278, 287 (M.D. La. 2022) (internal citation omitted and revised).

[28] *Raj v. La. State Univ.*, 714 F.3d 322, 331 (5th Cir. 2013) (internal quotation omitted).

[29] *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (internal quotations and citations omitted).

While the able district judge analyzed the claims under the *McDonnell Douglas* standard,[30] a plaintiff need only plead an adverse employment action, taken against her *because of* her protected status.[31] McLin fails to do this.

McLin seeks to meet the racial causation element with the comments made by Brumfield that her "hands are tied" as well as the Chief Judge's tone and comment stating "[i]n today's world that we live in, I have no other choice but to terminate you. You need to watch what you say and do." These speculative allegations do not carry the day. McLin issued the public statement "#IWillrunYouOver" in reference to driving her truck over peaceful protestors. Taking all the factual allegations as true, a more reasonable and obvious interpretation than the one put forth by McLin is that her termination had to do with her public threat to run over people. While the district court erred in requiring McLin to make allegations that satisfy the *McDonnell Douglas* standard, McLin still failed to plead one ultimate element a plaintiff *is* required to plead: that the termination was taken against her

---

[30] For example, the district court held that "Plaintiff satisfies the first three elements of her claim: she belonged to a protected class ([W]hite), excelled at her position, and was nonetheless fired. Still, as noted in Defendants' dismissal papers, Plaintiff falters at the fourth element because she has not plausibly alleged any differential treatment, which requires allegations establishing that a 'similarly situated' comparator was *not* fired despite committing nearly the same misconduct." *McLin*, 614 F. Supp. 3d at 288 (internal citation omitted). Being terminated is a sufficient adverse employment action.

[31] *Cicalese*, 924 F.3d at 767.

No. 22-30490

because of her protected status.[32] We conclude that McLin has not asserted plausible facts meeting the elements of this claim.[33]

**V.**

Finally, McLin argues the district court erred in granting Chief Judge Morrison qualified immunity on her First Amendment retaliation claim. We disagree.

"Qualified immunity shields government officials from civil liability in their individual capacity so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[34] "It protects all but the plainly incompetent or those who knowingly violate the law."[35] "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."[36] "Ultimately, 'the central concern is whether the official has fair warning that

---

[32] *Id.*

[33] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780–81 (5th Cir. 2007) ("We may affirm a district court's dismissal based on rule 12(b)(6) on any basis supported by the record." (internal citation omitted)).

[34] *Cunningham v. Castloo*, 983 F.3d 185, 190 (5th Cir. 2020) (internal quotation omitted).

[35] *Id.* (internal quotation omitted).

[36] *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

No. 22-30490

his conduct violates a constitutional right.'"[37] We may decide which prong of the qualified immunity analysis to address first.[38] Our inquiry starts and ends with the clearly established prong, whether Chief Judge Morrison violated a clearly established constitutional right.

To establish a First Amendment retaliation claim, the public employee must establish that: "(1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) her speech motivated the employer's adverse action."[39] Only the third prong is at issue.[40]

It is canon that "public employees do not surrender all their First Amendment rights by reason of their employment."[41] Rather, some speech, even if it "concerns information related to or learned through public employment," deserves protection because "'[g]overnment employees are

---

[37] *Clarkston v. White*, 943 F.3d 988, 993 (5th Cir. 2019) (quoting *Delaughter v. Woodall*, 909 F.3d 130, 140 (5th Cir. 2018)).

[38] *Pearson v. Callahan*, 555 U.S. 223, 242 (2009) ("[T]he judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking that will best facilitate the fair and efficient disposition of each case.").

[39] *Modica v. Taylor*, 465 F.3d 174, 179–80 (5th Cir. 2006) (internal citation omitted).

[40] *See Graziosi v. City of Greenville Miss.*, 775 F.3d 731, 740 (5th Cir. 2015) (observing that "whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public" due to its role as employer is a question of law (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006))).

[41] *Garcetti*, 547 U.S. at 417.

often in the best position to know what ails the agencies for which they work.'"[42] Yet, "[g]overnment employers, like private employers, need a significant degree of control over their employees' words and actions; without it, there would be little chance for the efficient provision of public services."[43]

In determining whether a public employee's speech is protected by the First Amendment, we "strike a balance between 'the interests of [employees] . . . commenting upon matters of public concern and the interest of [the government], as an employer, in promoting the efficiency of the public services it performs through its employees.'"[44] In particular, we evaluate whether the speech has caused disruption, impeded performance, or "affected working relationships necessary to the department's proper functioning."[45] "When close working relationships are essential to fulfilling public responsibilities, a wide degree of deference to the employer's judgment is appropriate."[46]

---

[42] *Lane v. Franks*, 573 U.S. 228, 236 (2014) (quoting *Waters v. Churchill*, 511 U.S. 661, 674 (1994) (plurality opinion)) (alteration in original).

[43] *Garcetti*, 547 U.S. at 418.

[44] *Graziosi*, 775 F.3d at 740 (quoting *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cnty., Ill.*, 391 U.S. 563, 568 (1968)).

[45] *Brawner v. City of Richardson, Texas*, 855 F.2d 187, 192 (5th Cir. 1988) (internal citation omitted).

[46] *Connick v. Myers*, 461 U.S. 138, 151–52 (1983). When performing this balancing test, courts consider "whether the statement impairs discipline by superiors or harmony among co-workers [or] has a detrimental impact on close working relationships for which

No. 22-30490

McLin fails to demonstrate that her interests outweigh those of the Twenty-First Judicial District.[47] The Supreme Court has explained that "[a] government entity has broader discretion to restrict speech when it acts in its role as employer, but the restrictions it imposes must be directed at speech that has some potential to affect the entity's operations."[48] Here, Chief Judge Morrison's interest in an efficient, harmonious work environment in its office outweighs McLin's interests in her speech.[49] Not only would a public Facebook post about running over Black Lives Matter protestors pose a threat to amicable workplace relationships, it strikes a blow against the Twenty-First Judicial District by undermining its efforts to stay true to the fact and image of a court whose "paramount purpose [is] providing a fair and impartial open forum in which the public may resolve its disputes."[50] Adding Chief Judge Morrison's substantial interest in maintaining workplace trust and efficiency and responding to threats to office morale, the balance weighs against McLin. In other words, McLin did not show that Chief Judge

---

personal loyalty and confidence are necessary[.]" *Rankin v. McPherson*, 483 U.S. 378, 388 (1987).

[47] *Pickering*, 391 U.S. at 568. "[T]he judicial branch depends upon the confidence of the people it serves. Without that necessary confidence, the judiciary cannot serve its paramount purpose of providing a fair and impartial open forum in which the public may resolve its disputes." *In re Benge*, 24 So. 3d 822, 845 (La. 2009). This duty falls upon Chief Judge Morrison.

[48] *Garcetti*, 547 U.S. at 418.

[49] A "chief judge . . . shall exercise, for a term designated by the court, the administrative functions prescribed by rule of court." La. Const. art. V, § 17.

[50] *In re Benge*, 24 So. 3d at 845. By McLin's own concession, her post was public and caused issues at work when T.D. saw it.

14

No. 22-30490

Morrison violated a clearly established constitutional right. For at the very least, the law is sufficiently uncertain so as to support Chief Judge Morrison's defense of qualified immunity.[51] This public servant cannot be held personally liable in money damages for the difficult choice he was called upon to make and that is the issue before this court. The district court did not err in granting Chief Judge Morrison's qualified immunity defense against McLin's First Amendment retaliation claim.

\* \* \* \*

For the foregoing reasons, we AFFIRM.

---

[51] *See McClendon v. City of Columbia*, 305 F.3d 314, 332 (5th Cir. 2002) (en banc) (holding that qualified immunity must be granted "if a reasonable official would be left uncertain of the law's application to the facts confronting him"); *Presley v. City of Benbrook*, 4 F.3d 405, 409 (5th Cir. 1993) ("[T]he essence of qualified immunity [is] that an officer may make mistakes that infringe constitutional rights and yet not be held liable where, given . . . uncertain circumstances, it cannot be said that []he knew []he was violating a person's rights.").