# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 15, 2025

Lyle W. Cayce
Clerk

_____

No. 24-50152

_____

Mathias Ometu,

*Plaintiff—Appellant*,

*versus*

City of San Antonio; Devin Day, *Officer, Badge # 0490*;
Richard Serna, *Officer, Badge # 1466*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-925

_____

Before Elrod, *Chief Judge*, and Higginbotham and Southwick, *Circuit Judges*.

Per Curiam:*

Police officers stopped Plaintiff because they believed he matched the description of someone accused of domestic violence. He declined to provide his name or any identifying information. He was detained, ultimately arrested, but later found not to be the described person. He brought Section 1983 claims against the officers and the municipality that employed them.

_____

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-50152

The district court granted summary judgment to the Defendants.  We AFFIRM.

FACTUAL AND PROCEDURAL BACKGROUND

The events at issue in this appeal were captured by body-worn cameras, dashboard cameras, and a backseat camera.  In August 2020, San Antonio Police Officer Richard Serna responded to a domestic violence call at an apartment complex.  As Serna approached, he saw the Plaintiff, Mathias Ometu, leaving that complex on foot.  Ometu is a heavily-bearded black man, and he was wearing a green t-shirt, a hat, and a white pair of basketball shorts with a black stripe down each side.  Serna did not stop Ometu at the time.  Instead, he went to the apartment to speak with the domestic violence victim, Kiara Davenport.  Davenport described her assailant as a black male who "kind of" had a beard and was wearing green.  Davenport also told Serna that her attacker had gone around the back of the apartment complex.  Serna called for assistance and gave a description of the suspect as a "black male, probably about six foot, like a neon green t-shirt, full, black beard."  Serna stated that he passed the suspect as he was entering the complex, but did not know what he looked like at that time.

Officer Devin Day responded and saw Ometu jogging in the area.  Day informed Serna of Ometu's location, and both officers approached him.  Serna arrived first and asked for Ometu's name, explaining that Ometu resembled the suspect he was looking for.  Ometu refused to provide that information.   After several attempts to obtain his name, Ometu was handcuffed.  Serna then called Davenport to obtain additional information about her attacker.  She gave Serna the name and date of birth of her attacker, Darren Smith, and Serna pulled up a mugshot from 2017.  Davenport also told Serna that her attacker was not wearing a hat. While Serna was speaking with Davenport, Day told Ometu: "Listen, man, the only reason we're

stopping you is because you match the description of the guy she said assaulted her." Ometu responded: "Yeah, black. Yeah, great job." Day insisted to Ometu that he stopped him because of his clothing description, not his race.

Serna asked for identification and grabbed Ometu's shorts pocket. Ometu told Serna to stop touching him and said, "I don't consent to a search." Serna explained to Ometu that he was responding to a domestic violence call and that Ometu seemed to fit the victim's description of the perpetrator. The officers attempted to arrange for Davenport to come to them and tell them if Ometu was her attacker, but she could not leave her small children alone. Davenport described her attacker to a third officer as 5'10, black, medium build, with short hair and "just a little bit of scruff on his chin," and wearing a green shirt with black basketball shorts. Serna informed the third officer that Ometu matched most of the description, except his basketball shorts, which were white with a black stripe, and the size of his beard. Officer Serna decided he would transport Ometu to Davenport for identification.

Ometu refused to enter the police vehicle on his own. The officers forced him into the vehicle by pushing and pulling him. Ometu yelled that the officers were choking him, and the officers denied they were doing so. Immediately after the struggle, Day can be heard telling the other officers that he was "kicked in the face" and "right in [his] eye." Day later told officers Ometu also kicked him in the leg. Day and Serna explained that Day had grabbed Ometu under his chin when he pulled him into the car. After Ometu was in the vehicle, Davenport arrived and told officers that Ometu was not her attacker. An hour after he was moved into the police vehicle, Ometu was informed he would be arrested for "failure to ID" and "assault on a PO." Those charges were brought, but it is not clear what happened to them.

Before Ometu was identified, Serna explained to other officers that he believed Ometu refused to identify himself because he was the attacker and had an outstanding robbery warrant. Serna told the other officers the description "pretty much matches, except for the beard." Another officer viewed the attacker's out-of-date mugshot and said "that looks a lot like him kind of . . . it looks a lot like him. You just throw some facial hair on there, add a few years."

Ometu filed suit against the City of San Antonio and the police officers under 42 U.S.C. § 1983, alleging violations of his Fourth and Fourteenth Amendment rights. He asserted claims against the City for failure to train, supervise, or discipline its police officers. He asserted claims against the officers for excessive force, substantive due process violations, unlawful detention, false imprisonment, negligence, and assault and battery. The City and Ometu filed cross-motions for summary judgment on Ometu's claim against the City. The police officers and Ometu filed cross-motions for summary judgment on Ometu's claims against them. The officers asserted a defense of qualified immunity.

The magistrate judge recommended granting the City of San Antonio summary judgment on Ometu's claims against it. The magistrate judge also recommended granting summary judgment to the officers based on qualified immunity. Ometu filed objections to the Report and Recommendations. The district court adopted the Report and Recommendations, finding it "abundantly clear from the video evidence, which the Magistrate Judge accurately relied on . . . that the reason Ometu was stopped is because he appeared to match the description of a domestic violence perpetrator." Further, the district court stated, "[i]n all other respects, Ometu's arguments are conclusory and give the Court no pause in adopting the Magistrate Judge's recommendation." Ometu timely appealed.

4

No. 24-50152

## DISCUSSION

On appeal, our review of a grant of summary judgment is *de novo*, meaning we consider the evidence and law as a district court would. *Perry v. Mendoza*, 83 F.4th 313, 316 (5th Cir. 2023). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Evidence and inferences are typically viewed "in the light most favorable to the nonmoving party." *McGlothin v. State Farm Mut. Ins. Co.*, 925 F.3d 741, 745 (5th Cir. 2019) (quoting *Cooley v. Hous. Auth. of Slidell*, 747 F.3d 295, 298 (5th Cir. 2014)). When, as here, there is video and audio of the incident in question, courts "should 'view[] the facts in the light depicted by the videotape.'"[1] *Garcia v. Orta*, 47 F.4th 343, 350 (5th Cir. 2022) (alteration in original) (quoting *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

As a threshold matter, Ometu argues the district court denied him due process by granting summary judgment although he "was ready, willing and able to commence [trial] on 4/8/2024 9:30AM prior to the entry of summary judgment." Ometu cites no authority to support his claim that he was denied due process, and he was not.

---

[1] Ometu asserts throughout his briefing that the district court mistakenly relied on fabricated evidence and "Appellees' false narratives and alternative facts." His conclusory attacks on the validity of the evidence do not rely on evidence in the record to support his claims. In his reply, he refers to "false, uncorroborated, and doctored video feeds," and devotes an entire section to a claim that the "video and audio recordings are not authenticated." Ometu did not raise a challenge to the authenticity of the video footage in his initial brief, and it does not appear that he ever raised it before the district court. Thus, we will not consider that argument. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).

No. 24-50152

We turn now to Ometu's other arguments.[2]

I.      *The City of San Antonio*

As to the City, Ometu's complaint alleged a failure to train, supervise, and discipline. On appeal, he also alleges a policy of racial profiling. Ometu forfeited his racial-profiling claim by failing to raise it in district court. *See Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021). We next consider Ometu's failure-to-train claim. In his briefing, Ometu concedes that Officer Day and Officer Serna received training and education on "many occasions." Specifically, he concedes the officers "were educated and trained and were aware of the United States Supreme Court's decision and rationale in *Terry v. Ohio*, 392 U.S. 1, 2 (1968)[,] concerning reasonable suspicion and detention and the Supreme [C]ourt decision in *Graham v. Connor*, 490 U.S. 386 (1989)[,] concerning the use of excessive force." With the failure-to-train and policy of racial-profiling claims thus disposed, we turn to Ometu's two remaining claims: failure to supervise and failure to discipline.

The Fourth Amendment to the United States Constitution prohibits "unreasonable searches and seizures." U.S. CONST. amend. IV. Section 1983 permits an individual to sue a person acting under color of law for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Under Section 1983, plaintiffs may bring these claims against municipalities if the deprivation was "pursuant to [an] official municipal policy." *Monell v. Dep't of Soc. Servs.*,

_____

[2] Ometu's Conclusion and Prayer contains requests that the district court's order dismissing his claims against the Chief of Police and his claims under the Texas Tort Claim Act be reversed. The rest of his briefing is devoid of any argument on either claim, save one line in his reply brief. Therefore, he has failed to brief the argument in adequate fashion, and we do not consider it. *Rollins*, 8 F.4th at 397.

436 U.S. 658, 691 (1978).  Under *Monell*, "a plaintiff must show that an official policy promulgated by a municipal policymaker was the moving force behind the violation of a constitutional right."  *Henderson v. Harris County*, 51 F.4th 125, 130 (5th Cir. 2022).

To succeed on a failure-to-supervise or failure-to-discipline claim under *Monell*, Ometu must show: (1) the City failed to supervise or discipline the officers involved; (2) a causal connection between that failure and the alleged violations of his rights; and (3) the failure constituted deliberate indifference to Ometu's rights.  *See Armstrong v. Ashley*, 60 F.4th 262, 277 (5th Cir. 2023) (failure to train); *Verastique v. City of Dallas*, 106 F.4th 427, 432 (5th Cir. 2024) (failure to discipline).  Deliberate indifference can be shown by establishing the City "had notice of a pattern of similar violations" or "the constitutional violation was the highly predictable consequence of a particular failure to train."  *Davidson v. City of Stafford*, 848 F.3d 384, 397 (5th Cir. 2017) (quoting *Kitchen v. Dallas County*, 759 F.3d 468, 484 (5th Cir. 2014), *abrogated in part by Kingsley v. Hendrickson*, 576 U.S. 389 (2015)).

The only evidence Ometu cites to support his claims are interrogatory responses from Officers Serna and Day asserting they are "not aware of any" records showing they had been disciplined for the use of excessive force or a false arrest.  In contrast, the City cites its many policies and procedures mandating standards for disciplining, supervising, and training officers.

Aside from citing three somewhat ambiguous interrogatory questions and responses, Ometu has directed this court to no evidence of a failure to supervise or a failure to discipline.  He has provided no evidence of a causal connection between any alleged failure and the alleged violations of his rights, and he has failed to show anything amounting to deliberate indifference of his rights.  We conclude that Ometu's failure-to-supervise and failure-to-

discipline claims cannot succeed, and the district court properly granted summary judgment in the City's favor.[3]

## II.    *Officers Day and Serna*

Next, we consider the claims against Officers Day and Serna. On appeal, Ometu asserts the officers stopped him without reasonable suspicion, arrested him without probable cause, and used excessive force against him.

The officers argue they did not commit any constitutional violations and are protected by qualified immunity. "Once an officer 'raises the defense of qualified immunity, the plaintiff bears the burden of showing the defense does not apply.'" *Perry*, 83 F.4th at 317 (quoting *Bryant v. Gillem*, 965 F.3d 387, 391 (5th Cir. 2020)). "To overcome qualified immunity, the plaintiff must show that the officer (1) violated a constitutional right that was (2) clearly established at the time." *Id.* A court may evaluate those factors in either order or even consider only one and conclude it is not satisfied. *Garcia v. Blevins*, 957 F.3d 596, 600 (5th Cir. 2020). "[A] right is 'clearly established' only if it 'is sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Betts v. Brennan*, 22 F.4th 577, 584 (5th Cir. 2022) (alteration in original) (quoting *Cunningham v. Castloo*, 983 F.3d 185, 191 (5th Cir. 2020)).

───────────────────

[3] Ometu makes a few passing references to the doctrine of ratification. The doctrine of ratification, which applies only in "extreme factual situations," allows for the establishment of a municipal liability based on post-conduct ratification by a policymaker. *Peterson v. City of Fort Worth*, 588 F.3d 838, 848 (5th Cir. 2009) (quoting *Snyder v. Trepagnier*, 142 F.3d 791 (5th Cir. 1998)). Ometu neglects to explain how his case falls within the bounds of "extreme factual situations," and he seems to cite the doctrine mostly in support of his racial-profiling claim. Ometu's brief is inadequate on this issue, and we reject the argument. *See Rollins*, 8 F.4th at 397.

### A. *Reasonable Suspicion*

We first consider whether the officers had reasonable suspicion to stop and detain Ometu. A police officer "can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot.'" *Turner v. Lieutenant Driver*, 848 F.3d 678, 690 (5th Cir. 2017) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). "[A] law enforcement officer acts with reasonable suspicion if, *based on the totality of the circumstances*, he has 'a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *United States v. Rose*, 48 F.4th 297, 302 (5th Cir. 2022) (emphasis added) (quoting *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). "Reasonable suspicion must exist *before* the initiation of an investigatory detention." *United States v. McKinney*, 980 F.3d 485, 490 (5th Cir. 2020). A stop must be "justified at its inception" and the officer's actions should be "reasonably related in scope to the circumstances that justified the stop." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (*en banc*). That means the duration of an investigatory stop "must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion).

> In assessing whether a detention is too long in duration to be justified as an investigative stop, we consider it appropriate to examine whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant.

*United States v. Sharpe*, 470 U.S. 675, 686 (1985). Our duty is not to "parse[] the situation in hindsight," but to "examin[e] it through the totality of [the officer's] experience in the moment." *See United States v. Martinez*, 102 F.4th 677, 685 (5th Cir. 2024).

No. 24-50152

Ometu argues there was no objective basis for believing he had committed a crime, and he was stopped simply because of the racism of the officers. The video tells a different story. Davenport gave Officer Serna a brief description of her attacker as a black man wearing green and with at least some semblance of a beard. Ometu is a black man with a beard who was wearing a bright green shirt, and he was leaving Davenport's apartment complex in the direction she indicated her attacker went. Those are clear, articulable facts that support reasonable suspicion for the purpose of a valid stop. The fact that Ometu had a large beard was not clearly contradictory to Davenport's description at the time Ometu was stopped.[4] We conclude the officers had reasonable suspicion to justify the stop at its inception.

We must now consider "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *Brigham*, 382 F.3d at 506. Recall, the officers were required to "diligently pursue[] a means of investigation that was likely to confirm or dispel their suspicions quickly." *Sharpe*, 470 U.S. at 686. As the detention continued, Officer Serna obtained additional information from Davenport and accessed a three-year-old mugshot of the attacker. He also received a more detailed description of Davenport's attacker from another officer. As Officer Serna acknowledged, the color of Ometu's shorts and his substantial beard did not

---

[4] Throughout his briefing, Ometu asserts no reasonable person could believe Ometu and Smith were the same person. To support his assertion, he provides a side-by-side comparison of Ometu and Smith. He argues "there is not a scintilla of evidence to demonstrate that Ms. Davenport gave Officer [Serna] a description of anyone that is: fully 'bearded black man dressed in a lime green t-shirt, a hat, and long shorts with a wide black stripe down the side of each leg . . . and a bald headed black man.'" Ometu misunderstands the standard for reasonable suspicion. It was not necessary that Ometu be the person Davenport described; it was only necessary that the officers were reasonable in their suspicion. *See Heien v. North Carolina*, 574 U.S. 54, 60–61 (2014). The officers had no current, side-by-side comparison photos at the time Ometu was stopped.

fit with Davenport's more detailed description. Ometu's hat also did not fit the description. Perhaps this new information was sufficient to dispel the officers' suspicion, such that the officers should have concluded the stop. Further, the officers may have "acted unreasonably in failing to recognize or to pursue" the alternative option of sending Davenport a photo of Ometu for identification to quickly dispel their suspicions. *See id.* at 687.

Even if the officers violated Ometu's constitutional rights, that would be sufficient to satisfy only one element of the analysis of qualified immunity. We would still be required to evaluate "whether the allegedly violated constitutional rights were *clearly established at the time of the incident*; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Hare v. City of Corinth*, 135 F.3d 320, 326 (5th Cir. 1998). We must use our "full knowledge of [our] own [and other relevant] precedents," to determine if the right was clearly established at the time of the incident. *Elder v. Holloway*, 510 U.S. 510, 516 (1994) (second alteration in original) (quoting *Davis v. Scherer*, 468 U.S. 183, 192 n.9 (1984)). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005). Therefore, the officers will be entitled to qualified immunity even if they were mistaken when they believed they had the requisite reasonable suspicion to continue the detention, so long as that belief was reasonable. *See id.*; *see also Rucker v. Marshall*, 119 F.4th 395, 400 (5th Cir. 2024).

Though the beard and color of Ometu's shorts did not match Davenport's later description, other facts weighed in favor of continued reasonable suspicion that Ometu could be Davenport's attacker. Based on these other facts, including the green shirt, Ometu leaving the apartment complex as Officer Serna entered to respond to Davenport's call, and Ometu's unwillingness to provide his name, the officers could have

reasonably, even if mistakenly, believed they still had the requisite reasonable suspicion to continue the detention. *See Rucker*, 119 F.4th at 400.

Throughout his detention, the officers took investigatory steps to identify Ometu, including the attempt to transport him to Davenport for identification. Though an alternative means of identification was available, the officers could have reasonably believed the detention was not too long because they continued to pursue investigatory steps. *See Sharpe*, 470 U.S. at 687–88. Moreover, the officers could have reasonably believed that transporting Ometu for identification was a reasonable investigatory step because it was unclear whether placing Ometu in the police car and transporting him back to the apartment complex would render the detention an arrest. We have held that, under appropriate circumstances, it can be "'reasonable to detain a suspect at gunpoint, handcuff [him], and place [him] in a police car' during an investigatory stop." *Smith v. Heap*, 31 F.4th 905, 911 (5th Cir. 2022) (alterations in original) (quoting *United States v. Thomas*, 997 F.3d. 603, 615 (5th Cir. 2021)). In addition, because "police may require a person temporarily detained under *Terry* to move to another place, the question is whether [the particular] transportation was reasonable." *United States v. McCargo*, 464 F.3d 192, 198 (2d Cir. 2006). We find that "officers of reasonable competence could disagree as to whether" the detention violated Ometu's constitutional rights. *See Tarver*, 410 F.3d at 750.

Ultimately, "we find no precedent that clearly establishes 'the violative nature of'" the officers' particular actions, and Ometu has not cited any. *Santander v. Salazar*, 133 F.4th 471, 482 (5th Cir. 2025) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). The officers are therefore entitled to qualified immunity for their stop of Ometu.

B. *Probable Cause*

We next consider Ometu's claim that he was arrested without probable cause. "An arrest is unlawful unless it is supported by probable cause." *Flores v. City of Palacios*, 381 F.3d 391, 402 (5th Cir. 2004). "Probable cause exists when the totality of facts and circumstances within a police officer's knowledge *at the moment of arrest* are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense." *United States v. Levine*, 80 F.3d 129, 132 (5th Cir. 1996) (emphasis added).

Ometu argues the officers continued to detain and arrest him without probable cause after Davenport told them he was not her attacker. According to Ometu, "[i]t is undisputed that Plaintiff-Appellant was [u]nlawfully [a]rrested in [v]iolation of [the] Fourth and Fourteenth Amendment[s]," and he is thus entitled to summary judgment. The officers argue "the uncontested video, still photos, and affidavit evidence show beyond doubt that Ometu used force to prevent or obstruct Day and Serna from effecting his transport," in violation of Texas Penal Code § 38.03, and "intentionally caus[ed] bodily injury to Day and Serna by kicking them," in violation of Texas Penal Code § 22.01. That evidence "established not only probable cause to believe that Ometu committed the offenses of assault and resisting transport but uncontroverted proof that he did in fact commit those offenses."

Under Texas law, it is an assault to "intentionally, knowingly, or recklessly cause[] bodily injury to another." TEX. PENAL CODE § 22.01(a)(1). It is a felony to assault a police officer "lawfully discharging an official duty." § 22.01(b)(1). The video footage shows Ometu kicking Day as he resists being placed in the vehicle for transport. The video footage supports a reasonable officer's conclusion that Ometu committed an offense

when he kicked the officers. Thus, the officers had probable cause to arrest Ometu for assaulting the officers because they had just witnessed it.

No constitutional violation occurred, because the officers had probable cause to make the arrest. The officers are entitled to qualified immunity on Ometu's unlawful-arrest claim.

## C. Excessive Force

Finally, we consider Ometu's claim that the officers used excessive force against him in violation of his Fourth Amendment rights. "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Reasonableness in this context is an objective standard. *Id.* at 397. "We have repeatedly held that 'noncompliance or continued physical resistance' justifies the use of force." *Rucker*, 119 F.4th at 403 (collecting cases). "Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham*, 490 U.S. at 396). Among the factors we consider are "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396. To prevail on his excessive force claim, Ometu "must show '(1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable.'" *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016)).

No. 24-50152

The use of force is captured, in its entirety, on the video footage with various angles.[5] Ometu repeatedly refused to identify himself despite the officers' numerous requests and their explanation that they were looking for a domestic violence suspect, so the officers decided to transport Ometu to Davenport for identification. At the time, the officers believed Ometu was likely Davenport's attacker, who she claimed choked her. The officers attempted to force Ometu into the car for approximately 2.5 minutes. At times, one officer pushed him while the other pulled him. At no point during the altercation did the officers kick, punch, or use a weapon against Ometu. When additional officers arrived, they ceased pushing him into the car and several officers spoke with Ometu while he sat in the car.

Considering the severity of the crime the officers believed Ometu committed and his active physical resistance, the officers did not use excessive force and are entitled to qualified immunity on that claim.

AFFIRMED.

---

[5] Although the officers' body-worn cameras fell off during the struggle, Serna's backseat camera and Day's dashboard camera continued to capture the incident.